STATE OF NORTH CAROLINA v. LEROY THORPE

No. 247

(Filed 20 November 1968)

1. **Constitutional Law § 32— right to counsel — in-custody interrogation**

Indigent defendant's failure to request counsel during in-custody questioning following his arrest cannot be regarded as a waiver of right to legal representation where (1) the defendant was a retarded and uneducated 20-year-old youth who had left school before completing the third grade, and (2) the officers, although advising defendant of his rights, including a statement that they would hire a lawyer if he could not afford one, failed to explain to defendant that he was entitled to counsel during the interrogation.

2. **Criminal Law § 76— admissibility of confessions — presumptions**

In determining the admissibility of a confession the courts are no longer permitted to rely on the presumption that a confession is deemed to be voluntary until and unless the contrary is shown.

3. **Constitutional Law § 32— right to counsel — indigent defendant**

Not only is accused entitled to representation at the trial, but under certain circumstances he is entitled to counsel at his in-custody interrogation: if accused is without counsel, and is indigent, counsel must be provided by the authorities or be intelligently waived.

4. **Criminal Law § 75— competency of confession — in-custody interrogation — waiver of counsel**

Where officers did not advise uneducated and retarded indigent defend-

ant of his right to counsel during in-custody interrogation following his arrest, the confession obtained during the interrogation is rendered incompetent, since defendant's failure to request counsel cannot be regarded as a waiver of right to counsel.

**5. Burglary and Unlawful Breakings § 6— instructions — felonious intent**

In prosecution for first degree burglary upon indictment charging that defendant did break and enter with the felonious intent to ravish and carnally know a named female by force and against her will, the trial court erred in merely instructing the jury that they must find that the breaking and entering was done "with the intent to commit a felony," it being necessary that the court charge an intent to commit the felony designated in the indictment.

**6. Burglary and Unlawful Breakings § 7— instructions on possible verdicts**

In first degree burglary prosecution upon indictment charging that defendant did break and enter with the felonious intent to ravish and carnally know a named female by force and against her will, trial court erred in failing to submit the question of defendant's guilt of non-felonious breaking as authorized by G.S. 14-54 where there was evidence that the defendant, a dull youth of previous good character, had made advances to other females on three occasions prior to the offense charged and, when his advances were rejected, had abandoned them without the slightest show of force.

**7. Burglary and Unlawful Breakings § 1— intent**

In burglary prosecution, the jury must find the intent in the mind of the intruder at the time he forced entrance into the house.

HUSKINS, J., concurs in result.

BOBBITT, J., concurring in result.

SHARP, J., joins in concurring opinion.

APPEAL by defendant from *Parker, J.,* January 29, 1968 Criminal Session, NASH Superior Court.

In this criminal prosecution the defendant was tried for the capital felony of burglary in the first degree. The indictment charged: ". . . Leroy Thorpe . . . on the 9th day of July [1967], with force and arms . . . unlawfully, willfully, burglariously and feloniously did break and enter the dwelling house of one Andrew Mullen at or about the hour of 12:20 o'clock a.m. midnight in the night of said date, said dwelling house being then and there actually occupied by Mrs. Andrew Mullen, with the felonious intent to unlawfully, willfully and feloniously ravish and carnally know one Mrs. Andrew Mullen, a female in said dwelling, by force and against her will. . . ."

The evidence disclosed the following: On the date involved, Mrs. Andrew Mullen, white, lived with other members of her family in her husband's house in Nash County. The defendant, a 20 year old colored male, lived in the community. He is described in the record as being uneducated, having quit school before he completed the third grade. He was classified as mentally retarded, with an I.Q. of 67. Witnesses described him as being of good character, never having been in any trouble.

Mrs. Mullen testified that about midnight she was awakened by her grandchild crying out. The room was dimly lighted by kerosene lamp. She saw the defendant standing at the foot of the bed. "I jumped up and tried to turn the light on but the lights would not come on. I said, 'What are you doing in here?' He whirled around and went right back out. The last thing I saw was his feet going out the front room window. . . . I had no conversation with him other than to holler out 'What are you doing in here?' He did not do anything to me while he was in there. . . . It was my shoe I threw at him. He never said anything."

The screen over the window through which the intruder escaped was cut. The electric light switch on the outside was disengaged. The witness identified the defendant, Leroy Thorpe, as the intruder in her bedroom. She reported the occurrence to officers, who took Thorpe in custody. Shortly after the arrest, the officers advised him that he need not answer any questions, that if he did the answers might be used against him. They advised him that he had the right to refuse answers at any time. Sheriff Womble testified: "I told him we would hire him a lawyer if he could not afford one. . . . He didn't request any lawyer." The defendant was indigent.

At the trial, the State undertook to introduce the in-custody admissions made by the defendant. His court-appointed trial counsel objected. The presiding judge conducted a voir dire examination in the absence of the jury. At the conclusion of the examination the Court entered the following:

> "The Court holds and finds as a fact that any statement made to Sheriff Womble and to Deputy Sheriff Doughtie was made freely and voluntarily without duress, coercion or threat, and without reward or promise of reward, and after the defendant had been fully warned of all rights that he had under the Constitution of the State of North Carolina and the Constitution of the United States, and that said statement was freely, voluntarily and knowingly made to the Sheriff and Deputy Sheriff by the defendant during the course of the investigation."

In the presence of the jury, the officers related the incriminating statements made by the defendant immediately after his arrest. These include an admission that on the afternoon of July 9, after drinking some wine and liquor, he went to a nearby cafe about 6:00 and while there he made some improper proposals to a white waitress. This incident took place just outside the building. She "cussed him out" and he left. Later, he went to the home of Henry Williams, colored, who was not at home. While the defendant was there, he made advances to Anne Williams, age 16. When she declined his proposition, he left. Later that night, he went to a house where he had seen a white girl who was wearing shorts and with whom he had talked shortly before night. He said he liked her looks. He went to the house, entered by the back door, which was closed but not locked, and went into the girl's bedroom. She made outcry and he immediately left. Later on, he went to the Mullen home and entered through a window after cutting the screen. He said his purpose was to find someone who would engage in intercourse. These statements were related to the jury over the defendant's objection.

. The defendant testified as a witness in his own behalf. He admitted being at the Mullen house looking for a mule which had strayed from the pasture. He denied, however, entering the Mullen home and denied making the incriminating statements the officers attributed to him. He introduced numerous witnesses who testified to his good character. Members of his family gave evidence tending to establish an alibi.

The jury returned a verdict of guilty of burglary in the first degree and recommended the punishment be imprisonment for life in the State's prison. From the Court's judgment in accordance with the jury's verdict, the defendant appealed.

*T. W. Bruton, Attorney General; Andrew A. Vanore, Jr., Staff Attorney, for the State.*

*W. O. Rosser for the defendant.*

HIGGINS, J.

[1] The first assignment of error involves the admissibility of the defendant's confession. Before permitting the investigating officers to relate to the jury the defendant's incriminating admissions, the Court conducted a voir dire examination in the jury's absence. The evidence disclosed the officers first talked with Mrs. Mullen, who had observed and recognized the defendant as the intruder in her home at about midnight. On the basis of her identifying statements,

they arrested Leroy Thorpe. The in-custody interrogation, therefore, was not for the purpose of making an arrest, but for the purpose of buttressing the proof of the burglary charge against the defendant. The officers testified that before the interrogation, they gave the defendant warnings as to his rights, including the statement that they "would hire a lawyer for him if he could not afford one". The officers testified: "He did not request any lawyer".

At this stage of the proceeding the officers had in custody a dull, retarded, uneducated, indigent boy 20 years old who had left school before he completed the third grade. In giving the advice with respect to counsel, the officers did not explain to him that he was entitled to counsel during the interrogation. To his inexperienced mind, in all probability, he understood the officers to mean that counsel would be made available at his trial. Counsel at in-custody questioning upon arrest was something relatively new at that time. His failure to request counsel at the interrogation is understandable. The failure to make the request under these circumstances was not a waiver of the right to legal representation during the questioning.

[1, 2]   The Court, at the conclusion of the voir dire examination, did not make any findings with respect to counsel. The evidence before the Court was not sufficient to justify a finding that counsel at the interrogation was offered, or the defendant's right thereto was understandably waived. In concluding the defendant was entitled to have counsel at his interrogation, and the right was not waived, we are no longer permitted to rely on the presumption that a confession is deemed to be voluntary until and unless the contrary is shown. Our rules to that effect have been discussed and applied in many decisions. *State v. Rogers*, 233 N.C. 390, 64 S.E. 2d 572; *State v. Davis*, 253 N.C. 86, 116 S.E. 2d 365; *State v. Bines*, 263 N.C. 48, 138 S.E. 2d 797; *State v. Goff*, 263 N.C. 515, 139 S.E. 2d 695; *State v. Hines*, 266 N.C. 1, 145 S.E. 2d 363.

[3]   Recent decisions of the United States Supreme Court, however, have forced us to re-examine our trial court practice with respect to counsel in cases in which constitutional rights against self-incrimination are involved. Not only is the accused entitled to representation at the trial, but under certain circumstances, he is entitled to counsel at his in-custody interrogation. If the accused is without counsel, and is indigent, counsel must be provided by the authorities, or intelligently waived. The prohibition is not against interrogation without counsel. It is against the use of the admissions as evidence against the accused at his trial. In *Miranda v. Arizona*, 384 U.S. 436, decided June 13, 1966, the Court said:

". . . We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.

\*          \*          \*

The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today. . . ."

In *Carnley v. Cochran,* 369 U.S. 506, the Court held:

". . . The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. . . ."

The *Carnley* quotation is approved in *Miranda,* which adds the following:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. . . . This Court has always set high standards of proof for the waiver of constitutional rights. . . ."

[4]    The high court in Washington calls the shots with respect to Fifth Amendment rights. We mark the targets according to the calls. The recent pronouncements force us to conclude the record before us in this case does not show that this dull, uneducated, retarded boy waived his right to counsel at the interrogation. That interrogation produced enough admissions to make out one, perhaps two, capital charges against him. At the same time, we recognize that the evidence of the State, independently of the defendant's admissions, was sufficient to go to the jury, and to sustain a verdict of burglary in the first degree. We conclude, however, under the rules which we must enforce, a proper foundation was not laid for admitting the confession. The defendant, by proper exception and assignment of

error, directly challenged the admissibility of the confession. In our opinion the challenge should have been sustained.

**[5]**    Moreover, there are two other objections which, though debated in the brief, are not so clearly delineated by exceptive assignments. Since this is a capital case and must go back for another trial, we discuss them. After the evidence was completed, the Court charged among other matters, the following:

> "The Court instructs you that you may return one of the following verdicts. You may return a verdict of guilty as charged in the bill of indictment, or you may return a verdict of guilty as charged in the bill of indictment and recommend that his punishment be life imprisonment, or you may return a verdict of not guilty.
>
> \*         \*         \*
>
> . . . If you find that the breaking and entering was done in the nighttime, that it was the dwelling house of another, that the dwelling house was occupied by some person at that time other than the accused, and that it was done with the intent to commit a felony while in said dwelling house, whether or not the intent was carried out, and you are further satisfied from the evidence and beyond a reasonable doubt that the defendant was the person who committed this offense, it would be your duty to return a verdict of guilty."

The charge of the Court as given was incomplete. At no time did the Court instruct the jury that in order to convict the defendant of a capital offense the jury should find, beyond a reasonable doubt, that the breaking and entering was with the intent to "unlawfully, willfully and feloniously ravish and carnally know one Mrs. Andrew Mullen". "Felonious intent is an essential of the crime . . . it must be alleged and proved and the felonious intent proven must be the felonious intent alleged. . . ." *State v. Jones,* 264 N.C. 134, 141 S.E. 2d 27. "But it is not enough in an indictment for burglary to charge generally an intent to commit 'a felony' in the dwelling house of another. The particular felony which it is alleged the accused intended to commit must be specified. . . . Indeed, burglary in the first degree, under our statute, consists of the intent, which must be executed, of breaking and entering the presently occupied dwelling-house or sleeping apartment of another, in the night-time, with the further concurrent intent, which may be executed or not, then and there to commit therein some crime which is in law a felony. This particular, or ulterior, intent to commit therein some designated felony, as aforesaid, must be proved, in addition to the more gen-

eral one, in order to make out the offense. . . ." The foregoing is taken from the opinion of Stacy, J. [later C.J.] in *State v. Allen*, 186 N.C. 302, 119 S.E. 504. That case, except the admission of the confession, fits the one now before us. The indictment having identified the intent necessary, the State was held to the proof of that intent. Of course, intent or absence of it may be inferred from the circumstances surrounding the occurrence, but the inference must be drawn by the jury.

[6 ,7] As disclosed by the evidence before the jury, a dull, intoxicated youth of previous good character was on the prowl looking for a female. On each of the three prior instances disclosed by the evidence, when his advances were rejected, he abandoned them without the slightest show of force. What about the defendant's intent, assuming he entered the Mullen home? When different inferences may reasonably be drawn from the evidence, the jury must draw them. In this case the jury must find the intent in the mind of the intruder at the time he forced entrance into the house. The defendant's intent may have been as charged in the bill, or his intent may have been to stop short of the use of force. The jury, under proper instructions, should make the determination. We think the question is whether the breaking was with the felonious intent of committing rape, or with the non-felonious intent of stopping short of the use of force. The Court cannot say as a matter of law that the defendant forcibly entered the Mullen home for the purpose of ravishing Mrs. Mullen by force and against her will. The evidence will permit that finding, but does not compel it.

The record of the trial shows errors in these particulars: (1) The State was permitted to introduce in evidence the defendant's confession without showing his clear cut waiver of counsel during the in-custody interrogation which brought it forth; (2) The Court failed to instruct the jury that proof of the intent to ravish Mrs. Mullen specified in the indictment was required before a verdict of burglary in the first degree could be rendered; and (3) The Court failed to submit a charge of non-felonious breaking as authorized by G.S. 14-54 (Chapter 1015, Session Laws of 1955).

For the reasons assigned, we conclude the defendant is entitled to a

New trial.

HUSKINS, J., concurs in result.

BOBBITT, J., concurring in result:

I concur in the decision and all portions of the opinion except two sentences, *viz.:* "The prohibition is not against interrogation without counsel. It is against the use of the admissions as evidence against the accused at his trial." I dissent from the view expressed in the quoted sentences.

The basic holding in *Miranda* is that, unless the officer has complied with the requirements set forth in *Miranda*, the in-custody interrogation of an accused violates his constitutional privilege against self-incrimination and therefore *is unlawful*. An admission or confession is inadmissible when and because it *is unlawfully* obtained. It is inadmissible then *as a means* of protecting an accused from *unlawful* violation of his constitutional privilege against self-incrimination. The excerpts from *Miranda* quoted in the Court's opinion support this view.

SHARP, J., joins in this opinion.