STATE OF NORTH CAROLINA v. JAMES T. KING
No. 6915SC516

(Filed 17 December 1969)

1. **Automobiles § 127— driving under influence of intoxicants — sufficiency of evidence**

    In this prosecution for driving under the influence of intoxicating liquor, the State's evidence *is held* sufficient for the jury where it tends to show that defendant's automobile was weaving in the highway, that defendant got out of his automobile with difficulty and staggered when he tried to walk, that defendant had a strong odor of alcohol about him, that defendant talked thick-tongued, and that a breathalyzer test showed defendant to have a blood alcohol content of .23%.

2. **Criminal Law §§ 118, 163— statement of contentions — failure to object at trial**

    Where defendant did not object to the court's statement of the State's contentions at the time they were given, objections thereto will not be considered for the first time on appeal.

3. **Automobiles § 126; Criminal Law § 64— breathalyzer results — qualification of expert witness**

    In this prosecution for driving under the influence of intoxicating liquor, the evidence was sufficient to qualify as an expert the officer who administered a breathalyzer test to defendant, and the officer's testimony of the test results was properly admitted, where the evidence shows that the officer had received 68 hours of instruction for the breathalyzer machine and that he was licensed by the State Board of Health to administer the test, and a copy of the license to do so was introduced in evidence.

**4. Automobiles § 126;   Criminal Law § 64—   breathalyzer results —
qualification of witness**

A person holding a valid permit to administer breathalyzer tests is-
sued by the State Board of Health is qualified to administer such a test,
and when such permit is introduced in evidence, the permittee is compe-
tent to testify as to the results of the test.

**5. Criminal Law § 75—   in-custody statements — failure to warn of
right to court-appointed counsel — defendant not indigent**

In this prosecution for driving under the influence of intoxicating
liquor, the trial court did not err in the admission of statements made by
defendant to the arresting officer after his arrest, notwithstanding the
officer failed to warn defendant that he had the right to a court-appointed
lawyer if he could not afford to hire one, where defendant was an edu-
cated schoolteacher who was not an indigent and who made no incrim-
inating statements, but at all times denied that he was under the in-
fluence of intoxicating beverages.

APPEAL by defendant from *Clark, J.,* 9 June 1969 Session, ALA-
MANCE County Superior Court.

The defendant was tried on a warrant charging him with unlaw-
fully and willfully driving a motor vehicle on one of the highways
of the State while under the influence of intoxicating liquors. To
this charge the defendant entered a plea of not guilty.

The defendant was first tried in the District Court where he was
found guilty and given a 90-day sentence suspended upon condition
that he pay a fine of $100 and the court costs. The defendant ap-
pealed from this judgment to the Superior Court where he was tried
*de novo.* From a jury verdict of guilty and judgment thereon, the
defendant appealed to this court.

The evidence on behalf of the State tended to show that on 24
December 1968 about 3:00 o'clock P.M. North Carolina State High-
way Patrolman Charlie Oakley observed the defendant driving in
a northerly direction on Interstate Highway 85 going toward Dur-
ham. The defendant was driving a Pontiac automobile at a speed
of approximately 50 miles per hour. The patrolman noticed the auto-
mobile weaving in the highway, that is he was weaving to the left
of the center line and then back to the right line at the shoulder of
the road. The patrolman observed this happening several times and
thereupon stopped the defendant by sounding the siren, and the de-
fendant pulled over and stopped. The patrolman asked him to get
out of the vehicle, and when he attempted to do so, the patrolman
observed that he got out with difficulty, and when he tried to walk,
he staggered; and the patrolman smelled the odor of alcohol on him.
The defendant talked thick-tongued and motioned with his hands

very much, and the odor of alcohol was very strong on his breath. The patrolman placed the defendant under arrest and carried the defendant in the patrol car to the patrol barracks on Interstate No. 85. At the time the patrolman was in his uniform. He testified that:

> "I told Mr. King going on in to the patrol barracks that he had the right to remain silent, he had the right to make no statement, anything that he said could be used for or against him in Court, and he had the right to have an attorney."

The trial court conducted a *voir dire* examination in the absence of the jury. On the *voir dire* examination the patrolman testified that after he arrested the defendant, the trip to the patrol barracks took about 10 or 15 minutes. It was during this trip that the patrolman advised the defendant that he had the right to remain silent. The defendant advised the patrolman that he knew what his rights were. The defendant stated that he was a schoolteacher and that the automobile, which was a late model Pontiac, belonged to him.

The defendant also testified on the *voir dire* examination. It was brought out that he was 41 years of age, taught school at a junior high school in the Greensboro City School System and, in addition to that, operated a restaurant business known as "King's Barbecue" in Greensboro. The defendant has a B.S. degree from A & T College and has done work on his Master's degree at A & T College and at the University of North Carolina. The defendant testified that he was not an indigent and made no contention that he did not have ample funds with which to employ counsel.

After the *voir dire* examination the Court entered the following order:

> "The Court finds the following facts: That the defendant was arrested on Interstate Highway 85 near Graham, North Carolina, about 3:10 P.M. on the 24th day of December, 1968. That at the scene the defendant was advised that he was under arrest on the charge of driving under the influence of intoxicating liquor, and was driven by Trooper Oakley to the Patrol Barracks, a drive taking about ten minutes, and during said time he advised the defendant of his constitutional rights as required by the United States Supreme Court under the *Miranda* decision, except that said officer did not advise the defendant that he had the right to a court appointed lawyer if he could not afford to hire one, and the Court further finds that the defendant *is a graduate of A & T College and is now working on his Master's degree at the University of North Carolina*, Greensboro, that he was employed as a school teacher by the Greens-

boro City Schools and that he was the operator of King's Bar-
becue, a restaurant in Greensboro, and that the defendant has
not contended that he was an indigent and has stated to the
Court that he was not an indigent. That soon after arriving at
the Patrol Barracks the defendant was asked questions and
answered the questions and that at no time was the defendant
either threatened nor was any promise made to force him to
answer the questions by Trooper Oakley.          .

The Court concludes that his statements of admission were
freely, voluntarily, knowingly and intelligently made."

Thereafter the Court permitted the State to introduce in evidence
the questions that had been asked the defendant and his answers
thereto.

The questions and answers which were admitted in evidence
comprised a routine form questionnaire eliciting such information
as where the defendant was going, where he had started, what his
occupation was, what, if anything, he had had to drink, whether he
was ill and taking any medicine and other questions pertaining to
his physical condition. The answers indicated that the defendant
was under no physical handicaps; that his occupation was a teacher;
that he had had a drink of Johnny Walker at 2:00 o'clock P.M. at
his home and that he was not under the influence of any alcoholic
beverage.

North Carolina State Highway Patrolman R. D. Woodruff ad-
ministered a breathalyzer test to the defendant at 3:34 P.M. on 24
December 1968. The test reading was .23 of 1% blood alcohol.

Officer Woodruff had nothing to do with making the arrest of
the defendant. He testified that he administered the test in accord-
ance with the rules laid down by the State Board of Health. He
further testified that he had been trained as a breathalyzer machine
operator and had attended a school conducted by the Department
of Community Colleges, Guilford Technical Institute, and that at
that school received 68 hours of instruction for the breathalyzer
machine; that subsequently he had been licensed by the North
Carolina State Board of Health to administer the test, and a copy
of the license given to him was introduced in evidence as an exhibit,
and it indicated that such license was in full force and effect at the
time the test was administered.

The defendant offered testimony tending to show that on the day
in question his activities had been perfectly normal and he gave a
detailed description of what he had done during the day including

about 2:00 o'clock having a drink in a 6-ounce cup of 60% water and 40% alcohol. He described his driving as perfectly normal, and his testimony refuted the testimony of the State tending to show that he was in any way under the influence of any intoxicating beverage on the occasion in question. He also offered testimony from various witnesses who testified as to the good character of the defendant.

*Attorney General Robert Morgan and Staff Attorney T. Buie Costen for the State.*

*Hampton, Comer and Harrelson by Wallace C. Harrelson for defendant appellant.*

CAMPBELL, J.

The defendant makes four contentions wherein error was committed in the trial.

**[1]**  The defendant contends that his motion for judgment as of nonsuit should have been sustained for that there was insufficient competent evidence to sustain a conviction. There is no merit in this contention. The evidence on behalf of the State when considered in the light most favorable to the State was ample and sufficient to sustain a conviction. There was raised a dispute of facts for the jury, and the jury decided these against the defendant.

**[2]**  The defendant next contends that the trial court committed error in the charge to the jury in that the court expressed an opinion in violation of G.S. 1-180. There is no merit in this contention. The trial court correctly instructed the jury as to the pertinent law and applied the same to the evidence in order to give a satisfactory explanation. The trial judge gave the respective contentions of both the State and the defendant and in doing so clearly designated the same as contentions. The defendant at no time objected to the statement of such contentions at the time they were given by the trial judge. The following rule would be applicable:

> "There are in the record many exceptions lodged to the contentions by the State given in his Honor's charge and these exceptions are preserved in the assignments of error, and some of them are set out in the appellant's brief, but in no instance did the defendant object to the statement of such contentions at the time they were given, and objections thereto for the first time being made upon appeal in this Court would seem to be untenable." *State v. Baldwin,* 226 N.C. 295, 37 S.E. 2d 898 (1946).

**[3]**   The third contention of the defendant is to the effect that the trial court committed error in permitting the introduction in evidence of the results of the breathalyzer test. The defendant asserts that Officer Woodruff who gave the breathalyzer test to the defendant was not shown to be a qualified person to give such test. The defendant relies upon the case of *State v. Mobley*, 273 N.C. 471, 160 S.E. 2d 334 (1968). The instant case is readily distinguishable from the *Mobley* case. In the *Mobley* case it was held that the evidence was entirely too meager to show the qualifications of the person making the test. In the instant case the evidence reveals that Officer Woodruff had received 68 hours of instruction for the breathalyzer machine and that he was licensed by the North Carolina State Board of Health to administer the test, and a copy of the license to do so was introduced in evidence. The relevant statute provides:

> ". . . The State Board of Health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the State Board of Health. . . ." G.S. 20-139.1(b).

**[4]**   We are of the opinion that a person holding a valid permit issued by the State Board of Health is qualified to administer a breathalyzer test. When such permit is introduced in evidence, the permittee is competent to testify as to the results of the test.

**[5]**   The fourth contention made by the defendant is that there was error in admitting the testimony of the arresting Officer, Oakley, when the defendant had not been sufficiently warned and advised as to his constitutional rights to remain silent. The defendant relies upon the case of *State v. Thorpe*, 274 N.C. 457, 164 S.E. 2d 171 (1968). The *Thorpe* case is readily distinguishable from the instant case.

In the *Thorpe* case the defendant was a "dull, retarded, uneducated indigent" 20 years of age who had not even completed the third grade in school. As a result of questioning the defendant, many incriminating statements were procured by the officers. In the instant case the defendant was an educated schoolteacher who was not an indigent and who made no incriminating statements, but to the contrary at all times denied that he was under the influence of any intoxicating beverages. Before admitting any statements of the defendant in the instant case the trial judge conducted a *voir dire* examination and entered an order finding the facts based upon competent evidence, and the findings made by the trial judge supported

his conclusion that the statements made by the defendant were "freely, voluntarily, knowingly and intelligently made."

We think the statements made by the defendant to Officer Oakley were competent. *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1 (1966).

The defendant had a fair and impartial trial free from any prejudicial error in law. The jury as the trier of the facts found the facts to be contrary to the contentions of the defendant. We find in law

No error.

PARKER and GRAHAM, JJ., concur.