STATE OF NORTH CAROLINA v. RICHARD WILLIAM ACCOR AND STATE OF NORTH CAROLINA v. WILLARD MOORE

No. 7127SC566

(Filed 15 December 1971)

1. Criminal Law § 66— legality of in-court identification — witnesses' observation of defendants during the crime

Trial court properly found that the identification of defendants as the perpetrators of first-degree burglary arose out of the witnesses' observations of the defendants during the burglary, and did not result from an illegal photographic identification, where there was evidence that the witnesses had struggled with the defendants for five or ten minutes during the time the defendants were in the witnesses' home, and that the area of the struggle was illuminated by the kitchen light.

2. Criminal Law § 98— sequestration of witnesses — discretion of trial court

The sequestration of witnesses is not a matter of right, but is a matter within the discretion of the trial judge, and the exercise of this discretion is not reviewable except in cases of abuse of discretion.

3. Criminal Law §§ 21, 98— sequestration of State's witnesses — preliminary hearing

Trial court's refusal to order the sequestration of the State's witnesses during the preliminary hearing was properly within its discretion.

State v. Accor and State v. Moore

4. **Burglary and Unlawful Breakings § 1— first-degree burglary — inference of intent to commit larceny**

 In a prosecution for first-degree burglary or felonious breaking and entering, the alleged intent to commit larceny need not be executed but may be inferred from the circumstances surrounding the occurrence.

5. **Burglary and Unlawful Breakings § 2—lesser included crime of first-degree burglary — felonious breaking or entering**

 The crime of felonious breaking or entering is a lesser included offense of first-degree burglary.

6. **Criminal Law § 115— conviction of lesser included offense — prerequisites**

 A defendant may be convicted of a lesser included offense when the offense charged in the bill of indictment contains all of the essential elements of the lesser offense and when proof of the allegations in the indictment would prove all of the elements of the lesser offense.

7. **Burglary and Unlawful Breakings § 7— first-degree burglary — instruction as to guilt of felonious breaking and entering**

 In a prosecution for first-degree burglary, it was proper for the trial court to instruct the jury that they could also return a verdict of guilty of felonious breaking and entering.

8. **Criminal Law § 171— erroneous submission of lesser offense — harmless error**

 Defendant cannot be prejudiced by error in submitting the question of defendant's guilt of a lesser included crime of the offense charged.

9. **Criminal Law § 122— additional instructions after retirement of jury — statement that "someone is going to have to decide the case"**

 Trial court's additional charge to the jury after the dinner recess, "If you don't reach a verdict, of course, it will be necessary that the case be tried again and someone is ultimately going to have to decide the case in Gaston County and I hope that it will be you," *held* without error, especially since the court also included the admonition that no juror was to surrender his conscientious opinion.

APPEAL by defendants from *Thornburg, Special Judge,* 1 February 1971 Session of Superior Court held in GASTON County.

On 4 March 1969 at approximately 2:00 a.m. a house occupied by Mrs. Elizabeth Martin Carson, her parents, Mr. and Mrs. Witt Martin and her brother, James Martin, was entered by two men. Three of the occupants were awakened and surprised the two men in the kitchen. A struggle ensued and the two intruders departed.

State v. Accor and State v. Moore

On 5 March 1969 the defendants Richard Accor and Willard Moore were picked up for questioning on a matter not related to this case. Pictures were taken of the defendants at this time. Later that day the pictures, along with eleven others, were shown to Mrs. Elizabeth Carson and James and Witt Martin who identified the defendants as the two men who entered their house on 4 March 1969. Warrants were issued charging the defendants with first-degree burglary.

At the preliminary hearing on 10 April 1969 counsel for defendants made motions to sequester the witnesses for the State on the grounds that the ability of the witnesses to identify the defendants would be crucial at both the hearing and the trial. The motions were denied. Probable cause was found and defendants were bound over to superior court.

The Grand Jury returned indictments charging the defendants with first-degree burglary. The defendants were brought to trial and found guilty of first-degree burglary on 11 June 1969. On appeal the North Carolina Supreme Court ordered a new trial. State v. Accor and State v. Moore, 277 N.C. 65, 175 S.E. 2d 583 (1970).

At the second trial the trial judge conducted a voir dire examination on the admissibility of the identification testimony of Mrs. Carson and James and Witt Martin. Based on the evidence presented on voir dire, the court made findings of fact and concluded as a matter of law that the photographs displayed to the witnesses were illegally obtained and inadmissible as evidence; that the testimony of Mrs. Elizabeth Carson as to the identities of the defendants was inadmissible in that it did not meet the standards for in-court identification established by the State and Federal Courts; that Witt Martin and James Martin could make in-court identifications, their identifications having been determined by the court to be of independent origin and not tainted by the photographs referred to.

The State presented evidence tending to show that Mrs. Carson was awakened at about 2:00 a.m. on 4 March 1969 by noises. She awoke her father, Witt Martin, and they went to the kitchen and turned on the light. They saw two men in the kitchen. Witt Martin identified the defendants as being the two men he saw in the kitchen. One of the men then struck Witt Martin and knocked him back into the bedroom. James Martin

was awakened by the disturbance and went to the kitchen. He was attacked by one of the men who stabbed and cut him several times. James Martin identified the defendants as the men he saw when he reached the kitchen. Witt Martin rejoined the struggle and struck the man attacking James. Mrs. Elizabeth Carson was hitting the other intruder with the telephone receiver. One of the intruders then grabbed Mrs. Carson and dragged her to the back door where he released her, and both men fled. The struggle lasted five to ten minutes. The struggle occurred in the kitchen and an adjoining hallway which was lighted by a small night light.

The defendants introduced evidence tending to show that they had gone to Charlotte on the afternoon of 3 March 1969 and spent the afternoon drinking. They returned to Gastonia in the evening and visited several places where they had more to drink. They took a taxi home. The taxi driver put the defendants out at a point between their respective homes. At this time a police officer stopped and settled a brief argument between the defendants and the taxi driver. The defendants went to their homes, arriving shortly before 2:00 a.m., and remained at their homes until the following morning. The defendants testified that they had never been in the residence occupied by Mrs. Carson and the Martins and that they had never seen Mrs. Carson or the Martins until the preliminary hearing in this case. Other witnesses gave testimony tending to corroborate the testimony of the defendants as to their whereabouts on the evening of March 3 and morning of March 4, 1969.

The trial court instructed the jury that it could return as to each defendant, one of the four following verdicts: (1) Guilty of burglary in the first degree with recommendation of life imprisonment; (2) guilty of felonious breaking or entering; (3) guilty of breaking or entering without intent to commit a felony; and (4) not guilty.

The jury retired at 6:05 p.m. At 7:45 p.m. the court sent for the jury, and, upon finding that no verdict had been reached, recessed for dinner. The jury returned at 9:00 p.m. and the court gave an additional instruction which read in part:

" * * * You have not been out long up to this point but I do hope that you and members of this jury will be able to reach a verdict as to each defendant. Coming as

you do from all parts of Gaston County, certainly you represent a cross section of the County, and certainly you are as intelligent a jury as we would ever hope to have to hear the evidence in the case. If you don't reach a verdict, of course, it will be necessary that the case be tried again and someone ultimately is going to have to decide this case in Gaston County and I hope it will be you. I am not asking either of you at any time to surrender any conscientious opinion that he or she may have as to how the verdict should be reached as to each defendant, but I am asking you to do your very conscientious best to reach a verdict in this case as to each defendant. * * * "

The jury retired again and returned at 11:10 p.m. The verdict as to each defendant, was guilty of felonious breaking or entering. The court entered judgments imposing prison sentences on each defendant. From these judgments, the defendants appeal.

*Attorney General Robert Morgan by Associate Attorney Walter E. Ricks III for the State.*

*Chambers, Stein, Ferguson and Lanning by Adam Stein and James E. Ferguson for defendant appellants.*

VAUGHN, Judge.

The defendants, in essence, raise three questions on appeal.

1. Whether error was committed when the trial court allowed the in-court identification of defendants by the State's witnesses and when, at the preliminary hearing, the court denied defendants' motion to sequester the State's witnesses.

2. Whether the trial court committed error by instructing the jury that it could return verdicts of either first-degree burglary or felonious breaking or entering.

3. Whether the trial court committed error by its additional instructions to the jury after the dinner recess.

The defendants challenge the in-court identification by Witt and James Martin on two grounds.

First, it is argued that the defendants' rights to counsel were violated when the police displayed their photographs to the Martins without having counsel present and therefore the sub-

---

---

sequent in-court identifications of the Martins were tainted and inadmissible. On the second point, the defendants argue that their motion to sequester the State's witnesses at the preliminary hearing should have been granted and that the failure of the court to do so deprived the defendants of the opportunity to test the independence of the witnesses' testimony.

[1] The law applicable to the in-court identifications in this case is well established. Where the defendant objects to the in-court identification on the grounds that it is tainted by illegal pre-trial procedures, the proper course is for the trial court to conduct a voir dire examination to determine whether the identification flows from the illegality or has an independent origin. *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S.Ct. 1926 (1967). The burden of proof is on the State to establish the independent origin of the identification, but, if it can carry the burden, the in-court identification may be admitted notwithstanding the illegal pre-trial procedure. *United States v. Wade, supra.* In this case the defendants complain that the in-court identifications by the Martins and Mrs. Carson were tainted by the display of photographs alleged to have been illegally obtained. Upon objection by defendants, the court conducted a voir dire examination of the witnesses. The voir dire was lengthy and comprehensive. The judge made findings of fact and concluded as a matter of law that the photographs displayed to the witnesses were illegally obtained and were inadmissible as evidence; that the identification testimony of Elizabeth Carson was inadmissible by reason of the fact that it did not meet the standards for in-court identification established by the State and Federal Courts; that Witt Martin and James Martin could make in-court identifications, their identifications having been determined to be of independent origin and not tainted by the photographs referred to. Based on these conclusions of law, the trial judge allowed Witt and James Martin to make in-court identifications of the defendants. The procedures followed by the trial court meet the procedures established by *United States v. Wade, supra,* and *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581. There is evidence in the record to support the trial court's conclusion that the identifications of the defendants by Witt and James Martin had origins independent of the photographic display. Each witness had observed the defendants during the confrontation and ensuing struggle on

4 March 1969. The area in which the struggle occurred was illuminated by the kitchen light. The fight lasted from five to ten minutes. The trial judge made findings of fact based on this evidence. The findings are conclusive if supported by competent evidence and no reviewing court may set aside or modify such findings. *State v. Wright, supra; State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1, cert. den. 386 U.S. 911, 87 S.Ct. 860, 17 L. Ed. 2d 784 (1966). We find no error in the trial court's admission of the identification testimony of James and Witt Martin.

[2, 3]   The defendants next argue that the court erred when it denied the defendants' motions to sequester the State's witnesses. North Carolina follows the rule that the sequestration of witnesses is not a matter of right, but is a matter within the discretion of the trial judge. The exercise of this discretion is not reviewable except in cases of abuse of discretion. *State v. Spencer*, 239 N.C. 604, 80 S.E. 2d 670 (1954) ; *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897 (1970). No abuse of discretion appears.

[4]   The defendants next contend that it was error to submit to the jury either first-degree burglary or felonious breaking or entering because there was no evidence of an intent to commit larceny. This intent need not be executed. The intent may be inferred from the circumstances surrounding the occurrence. *State v. Thorpe*, 274 N.C. 457, 164 S.E. 2d 171 (1968). In *State v. Accor and State v. Moore, supra*, the Supreme Court found from the circumstances sufficient evidence of intent to commit larceny for submission of the question of intent to the jury. The Court quoted with approval the following from *State v. McBryde*, 97 N.C. 393, 1 S.E. 925 (1887).

> " * * * 'The intelligent mind will take cognizance of the fact, that people do not usually enter the dwellings of others in the nighttime, when the inmates are asleep, with innocent intent. The most usual intent is to steal, and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also. The fact of the entry alone, in the nighttime, accompanied by flight when discovered, is some evidence of guilt, and in the absence of any other proof, or evidence of other intent, and with no explanatory facts or circumstances, may warrant a reasonable inference of guilty intent. Here there was no larceny or

other felony actually committed, and the guilt, if any, consisted in the *intent* to commit a felony, which was not consummated. * * * ' "

The defendants contend that the decision in *State v. Accor and State v. Moore, supra,* was contrary to the decision in *State v. Thorpe, supra,* and *State v. Allen,* 186 N.C. 302, 119 S.E. 504 (1923). We disagree. In *State v. Thorpe, supra,* the Court held that the indictment must allege and the prosecution must prove the specific felonious intent held by the accused at the time of the breaking and entering. The Court stated that intent may be inferred from the circumstances and that the jury must draw the inferences. In the present case the indictment specified the intent to commit larceny and there is sufficient evidence to permit the jury to find that intent. The *Allen* case imposes no more stringent requirement than that followed in *Thorpe* and *State v. Accor and State v. Moore, supra.* We find no error in submitting the charges of first-degree burglary and felonious breaking or entering to the jury.

[5-8] The defendants contend that it was error for the trial court to instruct the jury on felonious breaking or entering and to permit the jury to return that verdict. The defendants argue that the only three verdicts the jury could have returned on the evidence in this case were not guilty, guilty of non-felonious breaking or entering, or guilty of first-degree burglary. We do not agree. The crime of felonious breaking or entering is a lesser included offense of first-degree burglary. *State v. Gaston,* 4 N.C. App. 575, 167 S.E. 2d 510 (1969). A defendant may be convicted of a lesser included offense when the offense charged in the bill of indictment contains all of the essential elements of the lesser offense and when proof of the allegations in the indictment would prove all of the elements of the lesser offense. *State v. Riera,* 276 N.C. 361, 172 S.E. 2d 535 (1970). In the case before us the indictment alleged all of the elements of felonious breaking or entering and there is sufficient evidence of the elements of that offense to support a conviction. The charge on the lesser included offense was favorable to defendants and had it been error, it would have been error in favor of the defendants, and they cannot complain that it is prejudicial. *State v. Chase,* 231 N.C. 589, 58 S.E. 2d 364 (1950). It was not reversible error for the trial court to instruct the jury on felonious breaking or entering.

[9] The defendants' final argument is that the additional charge given the jury after the dinner recess was error. Defendants contend that the trial court's instruction that, "If you don't reach a verdict, of course, it will be necessary that the case be tried again and someone is ultimately going to have to decide the case in Gaston County and I hope that will be you," was an erroneous extension of the instruction approved in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L. Ed. 528. It is proper to use the so-called *Allen* charge to suggest to the jury the desirability of reaching a verdict provided it is made clear that the verdict must represent the judgment of each juror and not result from the surrender by any juror of his conscientious opinion. *Rhodes v. United States,* 282 F. 2d 59, cert. den. 364 U.S. 912, 81 S.Ct. 275, 5 L. Ed. 2d 226 (1960). To prevent its being coercive, the *Allen* charge must include the admonition that no juror is to surrender his conscientious opinion. *United States v. Rogers,* 289 F. 2d 433 (1961) ; *State v. McKissick,* 268 N.C. 411, 150 S.E. 2d 767 (1966). The charge before us included such an admonition in the words of the trial court that, "I am not asking either of you at anytime to surrender any conscientious opinion that he or she may have as to how the verdict should be reached as to each defendant." The trial court made it clear that no juror was to surrender his opinion. The defendants argue that the trial court erred in suggesting to the jury that, "someone is ultimately going to have to decide this case in Gaston County, and I hope it will be you." In *Fulwood v. United States,* 369 F. 2d 960, cert. den. 387 U.S. 934, 87 S.Ct. 2058, 18 L. Ed. 2d 996 (1966), the United States Court of Appeals for the District of Columbia Circuit approved a charge containing the statement that, "some jury some time will have the duty to decide this case, and *I hope* that you, as the jury in this case, *will be able* to decide this matter." In *Fulwood* the Court said of this part of the charge:

> " * * * This statement could not reasonably have any coercive effect. It is merely a legitimate expression of a *hope* that the jury would decide the case if it could. The statement that some other jury would have to decide the case if this one could not was accurate as a generality and, in any event, could have had no coercive impact on the jury. * * * "

We can see no significant difference between the charge in *Fulwood* and that in the case before us. We agree with the *Fulwood* court that the instruction is not coercive.

The defendants rely on the case of *United States v. Harris,* 391 F. 2d 348, cert. den. 393 U.S. 874, 89 S.Ct. 169, 21 L. Ed. 2d 145 (1968) in which a charge containing similar words was held to be error. In distinguishing the charge before it from the charge in *Fulwood,* and other cases, The Court in *Harris* said, "We are of the opinion however that the supplemental charge in this case, given under the circumstances then existing, was more coercive in nature than were the instructions in those cases." Two of the circumstances referred to by the Court were that the jury was told that a previous jury had failed to agree and that the jury had deliberated from 11:40 a.m. until 4:55 p.m. the previous day without reaching a verdict but returned a verdict within a short time after receiving the additional charge. In the case before us the jury was not told that it was a second trial. The jury in this case had been out only one hour and forty minutes prior to the supplemental instruction and remained out for another hour and forty minutes thereafter. This is not indicative of any coercive effect on the jury.

Considering the instructions in their entirety and the circumstances in which they were given, we find no error in the trial court's charge to the jury.

All of defendants' assignments of error have been carefully considered. In the trial we find no error.

No error.

Judges MORRIS and PARKER concur.