STATE OF NORTH CAROLINA v. ARCHIE BANNER, JR.

No. 65

(Filed 10 November 1971)

1. Criminal Law § 66— in-court identification of defendant — admissibility — victim's pretrial confrontation with defendant in absence of counsel

In a prosecution for armed robbery, the victim's in-court identification of the defendant was not tainted or rendered inadmissible by reason of her having seen the defendant in the presence of a police officer immediately after the robbery and at a time when defendant was not represented by counsel.

2. Criminal Law § 66— identification of defendant — change in clothing from time of offense

Identification of defendant as the perpetrator of an armed robbery was not weakened by the fact that, when the victim identified defendant 15 minutes after the robbery, the defendant was not wearing the white hat and sun glasses that he wore during the robbery, where the defendant was still wearing a gold and white sweat shirt and the orange corduroy pants with a tear on the right hip.

3. Robbery § 5— armed robbery prosecution — instruction on common law robbery

The trial court in an armed robbery prosecution was not required to charge on the lesser offense of common law robbery, where all the evidence tended to show an armed robbery and there was no evidence on which to predicate a charge of common law robbery.

APPEAL by defendant from *Kivett, J.,* January 4, 1971 Session FORSYTH Superior Court.

The defendant, Archie Banner, Jr., was charged by bill of indictment, proper in form, with the armed robbery of "the place of business known as Coleman's Take Home #1" on Northwest Boulevard, Winston-Salem.

At the trial the defendant, represented by counsel, entered a plea of not guilty. Miss Sandra Bradsher (the person in charge) testified that on December 8, 1970, around 8:30 p.m. while she was at the cash register, a man whom she did not know, pointed a small pearl handled pistol at her stating " . . . (I)t was a robbery and he wanted my money. . . . (H)e cocked the gun and he told me he wasn't fooling . . . . He told me he would shoot me if I didn't give him the money." The witness delivered the contents of the cash register—$50 to $60. During the robbery and as he left, the witness carefully observed his appearance and attire.

Miss Bradsher immediately called the police, reported the robbery and described the man and his clothing. At the time of the robbery the man was wearing " . . . (S)ort of rusty or orange color pants, goldish orange looking. They looked like a corduroy material and then he had on a sort of like a sweat shirt thing with stripes in it going around the body and they were white and kind of goldish orange, too. He had on a white jacket, a purple hat and sunglasses." As he went out the door, she observed he had a tear on the right rear of his pants.

In about 15 minutes the police officers appeared at Coleman's Take Home #1 with the defendant in custody. Miss Bradsher first said he looked like the robber. When she saw him in a better light, she made a positive identification.

Detective Goforth testified he received from Miss Bradsher a report of the robbery, a description of the robber, and a detailed description of his clothing. Mr. Goforth immediately broadcast a "lookout." Within about 15 minutes after the broadcast, Officer Johnson arrested the defendant near the scene. "At that time, the defendant was wearing a striped shirt as described by Miss Bradsher . . . yellow corduroy trousers . . . . (W)hen we turned him around, the right rear pocket was torn." The State introduced the shirt and pants in evidence.

The defendant testified that he was visiting friends at an apartment and left shortly before his arrest to go to a Broad Street store for cigarettes and beer. He was arrested as he was leaving the store. He said he had not been at the scene of the robbery. He testified, also, that Miss Bradsher could not identify him at first.

On cross-examination the defendant testified, "I can't recall if, on February 19, 1957, I was arrested and convicted of larceny. I still can't recall if, on May 27, 1959, I was arrested and convicted of store-breaking and larceny. I don't remember that I was convicted of violation of prohibition laws on May 18, 1963." The defendant did remember that he had been convicted twice for abandonment. He was unable to give the apartment number where he had visited friends just before his arrest. He admitted the shirt and pants which the State introduced in evidence were his.

The jury returned a verdict finding the defendant "guilty as charged." From the judgment imposing a prison sentence, the defendant appealed.

*Robert Morgan, Attorney General by (Mrs.) Christine Y. Denson, Assistant Attorney General for the State.*

*J. Erle McMichael and Wilson, Morrow and Boyles by John F. Morrow for defendant appellant.*

HIGGINS, Justice.

The defendant's exceptions and assignments of error involve (1) the failure of the court to conduct a voir dire to determine if defendant's constitutional rights were violated by failure to provide counsel during the pre-trial identification; (2) the failure of the court to sustain the motion to dismiss at the close of the evidence; and (3) the failure of the court to submit to the jury the lesser offense of common law robbery.

[1, 2] The objection to Miss Bradsher's in-court identification cannot be sustained. The defendant was picked up 15 minutes after and near the scene of the holdup. The arresting officer in the vicinity made the arrest after he received the radio description from police headquarters. Miss Bradsher gave a detailed description of the robber's attire—rusty or orange colored pants and a sweat shirt with white and "goldish" orange

stripes going around the body. As the robber left the scene, Miss Bradsher had noted a tear in the right rear of his pants.

The fact the robber did not have the purple hat, the white coat or the sunglasses does not weaken the identification. It would be normal for a guilty party to change his appearance as quickly as possible to escape detection and arrest. One out at night without a hat, or without sunglasses would not be unusual. However, it would seem unusual for one to appear on a cold December night in his shirt sleeves. Moreover, a second man on the street wearing a gold and white sweat shirt, orange colored corduroy pants with a tear on the right hip would be as infrequent as a visit to earth by Halley's Comet. In his testimony the defendant admitted he was wearing the described clothing at the time of his arrest. He did not claim to have swapped clothes between the time of the holdup and his arrest. The motion to dismiss was properly denied.

The defendant argues Miss Bradsher's in-court identification was tainted by the confrontation at the scene immediately after the robbery and at a time when the defendant was without counsel. He contends the in-court testimony should have been excluded. Both federal and state cases hold evidence of a prior identification will not invalidate the in-court identification unless the former was fundamentally unfair. The totality of the circumstances surrounding the prior identification will determine its admissibility at the trial. To remove the likelihood of a false identification is the purpose of the exclusionary rule. If the in-court identification is of independent origin, a prior confrontation of a suspect in the custody of the officers will not warrant excluding the identifying testimony. *Foster v. California*, 394 U.S. 440, 22 L. Ed. 2d 402; *State v. Austin*, 276 N.C. 391, 172 S.E. 2d 507, and cases therein cited.

This the officers knew: The defendant was arrested near the time and place of the robbery, attired in a shirt with alternating white and gold stripes around the body, golden orange colored corduroy trousers with a tear on the right hip. Surely this description with the other evidence was sufficient to make out the case of robbery. However, to guard against charging one whom the victim might exonerate, the officers requested the witness to look at the defendant. The physical evidence was sufficient to make out the case. Hence the defendant's chance of release depended not on a failure of the witness to identify

him, but on her opinion he was not the robber. The confrontation was to guard against holding the wrong man. *State v. McNeil*, 277 N.C. 162, 176 S.E. 2d 732.

In this case the defendant did not request a voir dire. Neither did he make a motion to suppress the identification at the scene of the robbery. The evidence offered shows the defendant was not prejudiced by the fact the State's chief witness saw him in the custody of the officers 15 minutes after the robbery wearing this unusual attire without a lawyer at his side.

[3] The exceptions to the court's failure to submit to the jury the offense of common law robbery was not error. All the evidence was to the effect that the robber drew a pistol, cocked it and threatened to use it unless Miss Bradsher, the attendant, surrendered to him the contents of the cash register. There was no evidence upon which to predicate a charge of common law robbery. *State v. Swaney*, 277 N.C. 602, 178 S.E. 2d 399; *State v. Owens*, 277 N.C. 697, 178 S.E. 2d 442.

Other assignments of error are formal and need not be discussed.

In the trial and judgment, we find

No error.