STATE OF NORTH CAROLINA v. MICHAEL EDWARD WESTRY
— AND —
STATE OF NORTH CAROLINA v. ALGERNON McCUTCHEON
— AND —
STATE OF NORTH CAROLINA v. WALTER CURTIS MILLER
— AND —
STATE OF NORTH CAROLINA v. FRANKLIN MONROE ABBNEY

No. 7218SC205

(Filed 28 June 1972)

1. **Criminal Law § 168; Robbery § 5— reading of statute to jury — punishment provision — absence of prejudice**

   In this prosecution for armed robbery, any error resulting from the court's reading of the armed robbery statute to the jury, including the provision for the punishment for such crime, was neither material nor prejudicial, although such practice is not approved.

2. **Criminal Law § 111— instructions — aiding and abetting — felonious intent**

   No exact forms or words are required to instruct the jury properly upon "aiding or abetting" or "felonious intent."

3. **Criminal Law § 112— instructions — aiding and abetting —. felonious intent**

   The trial court's instructions on aiding and abetting and felonious intent were free from prejudicial error when the charge is considered as a contextual whole.

4. **Criminal Law § 66— in-court identification — prior identification at arrest scene — absence of counsel**

   Robbery victims' in-court identifications of defendants were not tainted or rendered inadmissible by reason of their having viewed

and identified defendants at the scene of defendants' arrest while defendants were unrepresented by counsel, where the victims had ample opportunity to observe defendants during the robbery and the court found that their in-court identifications were based upon these independent observations, the confrontation at the arrest scene occurred only an hour after the robbery, no active cooperation other than their presence was required of defendants, all of the physical evidence and prior descriptions corroborated the identifications, and the trial judge conducted a full and fair *voir dire* hearing and concluded that the victims' identification testimony would not be "tainted" by improper out-of-court identification.

5. **Arrest and Bail § 3— arrest without warrant — probable cause — information received by radio**

Police officer had probable cause to arrest defendants without a warrant for armed robbery where the officer had received a radio transmission advising him that a robbery had been committed by four Negro males in a 1967 or 1968 Dodge Charger displaying a District of Columbia license plate reading "GWYNN," and defendants and the automobile in which they were riding met the description given to the officer by radio. G.S. 15-41(2).

6. **Criminal Law § 87— leading questions**

Leading questions are permissible under certain circumstances and, absent an abuse, are within the discretion of the trial judge.

7. **Indictment and Warrant § 13— bill of particulars — discretion of court**

A motion for a bill of particulars is addressed to the sound discretion of the trial court, and his decision will not be disturbed on appeal in the absence of a demonstrable abuse of discretion.

8. **Indictment and Warrant § 13— motion for bill of particulars — denial**

The trial court in an armed robbery prosecution did not abuse its discretion in the denial of defendant's motion for a bill of particulars, where the indictment sufficiently apprised defendant of the nature and details of the crime charged, and it has not been shown that any of the State's evidence at the trial was a surprise to defendant or was not within his personal knowledge.

9. **Criminal Law § 98— trial in prison clothes**

Defendants were not required to stand trial in prison clothes in violation of G.S. 15-176, defendants having objected to being placed on trial "in a gray shirt and gray trousers," where the record shows that the State had offered to return to them the clothes they had on when arrested and had offered them the opportunity to obtain other clothing, and that defendants, through their respective counsel, refused to accept the return of clothing by the State or to obtain other attire.

10. **Criminal Law §§ 66, 88— voir dire — cross-examination — refusal to allow by counsel for one defendant**

In this consolidated trial of four defendants, the trial court did not err in denying counsel for one defendant the right to cross-examine a State's witness during a *voir dire* hearing to determine

whether the witness' identification testimony was tainted by prior out-of-court identification procedures, where the witness had at no time purported to identify such defendant and did not do so at the trial, and counsel for such defendant was permitted to cross-examine the witness before the jury.

**11. Robbery § 4— armed robbery — sufficiency of evidence**

The State's evidence in an armed robbery prosecution, including eyewitness testimony and evidence that weapons used in the robbery and fruits of the robbery were found on defendants' persons and in the vehicle in which they were riding, was sufficient for submission to the jury as to the guilt of all four defendants.

APPEAL by defendants from *Seay, Judge,* 9 August 1971 Criminal Session of Superior Court held in GUILFORD County.

The defendants were charged in separate bills of indictment, proper in form, with the felony of armed robbery and the cases were consolidated for trial.

The evidence for the State tended to show the following: About 7:30 p.m. on the evening of 21 June 1971, four Negro men entered the Coburn Finance Company (Coburn) on North Elm Street in Greensboro, North Carolina. Three of Coburn's employees were at the office at the time: Mr. Gary Knight (Knight), the acting manager; Linda Karen Greeson (Greeson), the cashier; and Mr. Walter Snow (Snow), an assistant manager. One of the Negro men, the defendant Miller, produced a gun from underneath a coat that he had draped over his shoulder and told Knight, "This is a holdup." The defendant Abbney also had a gun. The Coburn employees were ordered to a back room, where they were bound by the defendants and interrogated at gunpoint as to the location of a safe. The defendants took $773.19 in cash from Coburn's cash drawer, $240.00 in cash from the person of Knight, $155.00 in cash from the person of Snow and some personal property, including a billfold, watch and ring, from Greeson.

Upon leaving Coburn's premises and while in an alleyway and on Elm Street, the defendants were seen by three men, State's witnesses Williams, Todd and Freeman, who were leaving their work site at the Southeastern Building to return to their office on Greene Street by way of Elm Street. All of these witnesses testified at the trial that they took particular notice of the defendants due to their somewhat unusual appearance and manner. In addition, they also noticed a blue and white

Dodge Charger automobile parked on Greene Street in front of the witnesses' office, and Freeman testified that he saw the four Negro men get into this automobile and depart. Williams testified that the automobile had "a personalized (license) tag on it that was different."

State's witness J. T. Lumen of the Greensboro Police Department testified that about a "quarter to seven" on 21 June 1971, he had seen "several Negro subjects" in a 1968 Dodge Charger automobile bearing a District of Columbia license plate with the word "GWYNN."

After the defendants had left Coburn's office, Knight, Greeson and Snow quickly freed themselves and notified the Greensboro police, who made an investigation at the scene, interviewed witnesses (including Williams, Todd and Freeman) and made a radio "transmission" to other law enforcement officers in the State advising them to be on the lookout for four Negro males in a 1967 or 1968 Dodge Charger displaying a personalized District of Columbia license plate reading "GWYNN."

About 8:15 p.m. on the same evening, State Highway Patrolman D. B. Durham, on routine patrol in Rockingham County, observed an automobile matching the foregoing description traveling toward Reidsville on Highway 29, called for help and was almost immediately joined by a Reidsville Police Department vehicle operated by Sergeant Bill Harvey. In response to the patrolman's blue light and siren, the Dodge automobile stopped by the side of the road. Officer Durham parked behind the Dodge, approached the vehicle with his gun drawn, and instructed the occupants to get out of the automobile and to place their hands above their heads. At one point, the defendant Miller "grabbed for my (the patrolman's) gun." The officers subdued him and then "handcuffed him and placed him in the patrol car." Defendants Abbney, McCutcheon and Westry emerged from the vehicle and stood by the Dodge automobile, and Patrolman Durham made a call to the Greensboro Police Department.

Upon looking into the Dodge automobile, the officers observed a fully loaded, nickel-plated, pearl-handled .38 revolver (State's Exhibit 7) partially underneath the front seat but otherwise in plain view. In addition, two other guns, some money "pushed down between the (back) seat and the side panel" but "sticking up" and visible, other smaller amounts of money in

coin, a green canvas bag, some 38-calibre ammunition, some twine (which was the same in appearance as that used to bind the Coburn employees) and other items were found in the Dodge Charger automobile while it was stopped on Highway 29 and later after it was returned to a garage in Greensboro. It also appeared that the automobile in which the defendants were riding had been stolen, inasmuch as none of the four was its owner.

Members of the Greensboro Police Department, in response to Patrolman Durham's call, quickly arrived (about 8:40 p.m.) at the scene on Highway 29 where the Dodge automobile had been stopped and the defendants detained, bringing with them the victims of the armed robbery, Knight, Greeson and Snow. Each of these victims was asked to observe the four defendants, who were handcuffed and standing beside the Dodge automobile, but to say nothing at that time. Upon learning that the victims recognized the four defendants as being the four men who had robbed them and Coburn Finance Company at gunpoint, Greensboro Detective W. E. McNair advised the defendants that they were under arrest for armed robbery and instructed other Greensboro officers to take the defendants (and the Dodge automobile) back to Greensboro.

Approximately 9:30 p.m. on the same evening, the defendant Westry was searched and a Campbell College class ring with the initials "LKG" inscribed on the inside was found on his person. In open court, Linda Karen Greeson identified this ring as being the one taken from her during the course of the armed robbery of Coburn on 21 June 1971.

In court, Knight, Greeson, Snow, Williams, Todd and Freeman each identified some of the defendants. Although none of these witnesses for the State could identify all four of the defendants, each defendant was identified in court by at least one of the victims, Knight, Greeson or Snow and by at least one of the other State's witnesses, Williams, Todd or Freeman. The defendant Miller was identified by five of these six witnesses for the State, the defendants Abbney and McCutcheon by four each, and the defendant Westry by two. In addition, a latent palm print obtained from surfaces at the Coburn office shortly after the armed robbery were identified by an agent of the Federal Bureau of Investigation as being that of the defendant McCutheon.

The defendants presented no evidence.

The jury returned a verdict of guilty of armed robbery as to each of the defendants, and thereupon, the court imposed judgment that each defendant be imprisoned for a term of not less than twenty-five nor more than thirty years (twenty to thirty years as to the defendant Westry). From the foregoing judgments, each defendant appealed to the Court of Appeals.

*Attorney General Morgan and Assistant Attorney General Lake for the State.*

*Public Defenders Wallace C. Harrelson and Dale Shepherd for defendant appellants.*

MALLARD, Chief Judge.

In the trial in superior court, the defendant Westry was represented by the Public Defenders for the Eighteenth Judicial District and each of the other defendants individually by appointed counsel. Based upon a total of more than 170 exceptions and 150 assignments of error, these defendants present eleven questions for decision on this appeal. Eight of these questions are common to all of the defendants, one pertains to both defendants Miller and Abbney, one pertains only to the defendant McCutcheon and another pertains only to the defendant Westry. This is the proper and preferred manner of perfecting a joint appeal and is commendable. We shall consider each question separately, with appropriate designation when the question applies to fewer than all of the defendants.

[1] The first question involved in this appeal is whether the court erred "in charging the jury on the punishment that the charged crime carried." The defendants rely primarily upon the case of *State v. Rhodes,* 275 N.C. 584, 169 S.E. 2d 846 (1969), but that case is not controlling under the present circumstances. In *Rhodes,* the jury returned to the courtroom after having begun their deliberations and specifically requested to know the penalty for one of the lesser included offenses of the crime charged, which implied that such information would have a bearing upon their decision of guilt or innocence. Even so, the Supreme Court held that the error committed in informing the jury of the maximum penalty involved was not prejudicial, adding that: "It does not follow, however, that instructions disclosing the punishment authorized by statute will always constitute prejudicial error."

In the case before us, the only mention of "punishment" in Judge Seay's instructions was when the applicable statute, G.S. 14-87, was read verbatim to the jury. Although this practice is not approved in an armed robbery case, we think that in the present case any error resulting from a plain reading of the statute without further comment was neither material nor prejudicial. See *State v. Hill,* 9 N.C. App. 410, 176 S.E. 2d 350 (1970).

[2, 3] The defendants, in questions "II" and "III," also contend that the court erred in its charge to the jury concerning "aiding and abetting" and as to "felonious intent." No exact forms or words are required to properly instruct a jury upon "aiding and abetting" or "felonious intent." See *State v. Mundy,* 265 N.C. 528, 144 S.E. 2d 572 (1965); *State v. Anderson,* 5 N.C. App. 492, 168 S.E. 2d 444 (1969). When the *entire* "Charge of the Court" as it appears in the record on appeal is considered as a contextual whole, we hold that it is free from prejudicial error.

[4] The defendants' fourth contention is that the court committed error "in refusing to allow the motion to suppress the identification of the defendants made by Linda Greeson, Walter Snow and Gary Knight, and in finding that the identification made by these three witnesses was not tainted by an improper identification procedure." In this regard, we note that the trial judge conducted exhaustive pre-trial voir dire examinations, examinations covering over fifty pages in the record on appeal, to determine the propriety of admitting such identification testimony and found that the in-court identification would not be "tainted by an improper out-of-court identification; that there was no improper out-of-court identification; and that no suggestions were made by any police officers as to the identity of the participants in the alleged robbery."

As previously set out, the four defendants were stopped on Highway 29 near Reidsville by a State highway patrolman as the result of a radio transmission describing the defendants and the automobile in which they were riding. Shortly thereafter (within less than an hour), members of the Greensboro Police Department transported the three victims of the robbery to the point on Highway 29 where the defendants were being detained and the defendants were initially identified at that time. Additionally, the witness Greeson was asked at the time the

defendants were being photographed in Greensboro on the same evening "what each of them that she had identified did during the robbery."

The defendants contend that two points are raised by this procedure: (1) "whether the identification procedure was too suggestive" and (2) "whether the defendants were denied rights to counsel because of the lineup," and rely primarily upon the cases of *United States v. Wade,* 388 U.S. 218, 18 L.Ed. 2d 1149, 87 S.Ct. 1926 (1967) and *Gilbert v. California,* 388 U.S. 263, 18 L.Ed. 2d 1178, 87 S.Ct. 1951 (1967). The effect and application of these two cases, and of other constitutional considerations, have been much discussed and analyzed both by this court and by the North Carolina Supreme Court in a number of subsequent opinions involving similar pre-trial identifications. The following cases have uniformly held that the absence of counsel during such out-of-court identification procedures (contrary to the assertion in defendants' brief, there was no "lineup" in the present case) is not necessarily violative of an accused's constitutional rights and does not require the suppression or exclusion of subsequent in-court identification testimony. *State v. Banner,* 279 N.C. 595, 184 S.E. 2d 257 (1971); *State v. Thompson,* 278 N.C. 277, 179 S.E. 2d 315 (1971); *State v. Murphy,* 10 N.C. App. 11, 177 S.E. 2d 917 (1970), *appeal dismissed,* 277 N.C. 727, *cert. denied,* 278 N.C. 105; *State v. Gatling,* 5 N.C. App. 536, 169 S.E. 2d 60 (1969), *aff'd.,* 275 N.C. 625, and *State v. Bertha,* 4 N.C. App. 422, 167 S.E. 2d 33 (1969). See also, *Russell v. United States,* 408 F. 2d 1280 (D.C. 1969), *cert. denied,* 395 U.S. 928, 23 L.Ed. 2d 245, 89 S.Ct. 1786 (1969); *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970), *cert. denied,* 400 U.S. 946; *State v. Williams,* 274 N.C. 328, 163 S.E. 2d 353 (1968); *State v. Accor* and *State v. Moore,* 13 N.C. App. 10, 185 S.E. 2d 261 (1971), *aff'd.,* 281 N.C. 287 (1972) and *State v. Stamey,* 3 N.C. App. 200, 164 S.E. 2d 547 (1968).

We further note that in the present case the victims of the crime had ample opportunity to observe the defendants during the course of the robbery and that they indicated during the voir dire examinations and the court found that their in-court identification was based upon this independent observation, that the defendants were apprehended within one hour after the commission of the armed robbery and were confronted with the identifying witnesses within a matter of min-

utes thereafter, that no active cooperation (other than their presence) was required of the defendants, that all of the physical evidence and prior descriptions corroborated the identifications and, primarily, that the trial judge conducted full and fair voir dire examinations and concluded that the witnesses' identification testimony of the defendants would not be "tainted" by improper out-of-court identification.

In *State v. Banner, supra,* Justice Higgins made the following observations:

" * * * Both federal and state cases hold evidence of a prior identification will not invalidate the in-court identification unless the former was fundamentally unfair. The totality of the circumstances surrounding the prior identification will determine its admissibility at the trial. To remove the likelihood of a false identification is the purpose of the exclusionary rule. If the in-court identification is of independent origin, a prior confrontation of a suspect in the custody of the officers will not warrant excluding the identifying testimony. *Foster v. California,* 394 U.S. 440, 22 L.Ed. 2d 402; *State v. Austin,* 276 N.C. 391, 172 S.E. 2d 507, and cases therein cited.

This the officers knew: The defendant was arrested near the time and place of the robbery, attired in a shirt with alternating white and gold stripes around the body, golden orange colored corduroy trousers with a tear on the right hip. Surely this description with other evidence was sufficient to make out the case of robbery. However, to guard against charging one whom the victim might exonerate, the officers requested the witness to look at the defendant. The physical evidence was sufficient to make out the case. Hence the defendant's chance of release depended not on a failure of the witness to identify him, but on her opinion he was not the robber. The confrontation was to guard against holding the wrong man. *State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732."

The assignments of error relating to the court's refusal to suppress the identification of the defendants made by witnesses Knight, Greeson and Snow are overruled.

[5] The defendant's fifth contention is that the trial court erred "in failing to find that there was no probable cause for

the arrest of all the defendants and in finding that the arrests were valid." This contention is also without merit. The defendants would have us make the distinction between probable cause and "mere suspicion." Without again setting forth the entire factual situation in the case before us, we think that Patrolman Durham was justified in assuming, based upon the radio "alert" that he had just received, that the four Negro men he observed traveling north from Greensboro in a 1968 blue and white Dodge Charger automobile bearing the District of Columbia license plate "GWYNN" were the same men as those just described to him as the perpetrators of an armed robbery.

G.S. 15-41, in pertinent part, provides: "A peace officer may without a warrant arrest a person: . . . (2) When the officer has reasonable ground to believe that the person to be arrested has committed a felony and will evade arrest if not immediately taken into custody." We hold that the officer in the present case had reasonable grounds to stop and take into custody the defendants; indeed we cannot conceive how law enforcement officers would be able to function in such cases were it to be held otherwise. These assignments of error are also overruled. See *State v. Jackson*, 280 N.C. 122, 185 S.E. 2d 202 (1971); *State v. Bell*, 270 N.C. 25, 153 S.E. 2d 741 (1967); *State v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506 (1965), *cert. denied*, 384 U.S. 1020, 16 L.Ed. 2d 1044, 86 S.Ct. 1936 (1966), and 1 Strong, N. C. Index 2d, Arrest and Bail, § 3.

The defendant's sixth contention concerns the admission into evidence of a number of items obtained from the search of their persons and the Dodge automobile in which they were riding, and requires no discussion in light of our holding above that probable cause existed for the detention and arrest of the defendants. The assignments of error relating to the admission of this real evidence are overruled.

[6] The next question presented concerns the use of allegedly leading questions by the solicitor. Leading questions are permissible under certain circumstances and, absent an abuse, are within the discretion of the trial judge, but defendants characterize the solicitor's "leading" in the present case as being so "continual (almost continuous)" and "blatant" as to constitute reversible error. We do not agree. We have reviewed with care

those portions of the record on appeal referred to by the defendants and, even conceding that some leading questions were permitted, the evidence was competent and no abuse of discretion is made to appear. See 2 Strong, N. C. Index 2d, Criminal Law, § 87, and cases cited therein.

[7] The next question, denominated "VIII" in the defendant's brief, applies only to the defendant McCutcheon, who contends that the court erred failing to grant his motion for a bill of particulars. Again, this is a matter addressed to the sound discretion of the trial court, and his decision will not be disturbed on appeal in the absence of a demonstrable abuse of discretion. *State v. Vandiver*, 265 N.C. 325, 144 S.E. 2d 54 (1965).

The indictment returned against the defendant McCutcheon reads as follows:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Algernon McCutcheon late of the County of Guilford on the 21st day of June 1971 with force and arms, at and in the County aforesaid, unlawfully, wilfully and feloniously having in possession and with the use and threatened use of a certain firearm, to wit: a pistol, whereby the lives of Gary Knight, Walter Snow and Linda Karen Greeson were endangered and threatened, did commit an assault upon and put in bodily fear the said Gary Knight, Walter Snow and Linda Karen Greeson and by means aforesaid and by threats of violence and by violence did unlawfully, wilfully and feloniously take, steal and carry away personal property, to wit, $1,148.19 in good and lawful money of the United States from the place of business known as Coburn Finance Corporation of North Carolina where, at said time, the said Gary Knight, Walter Snow and Linda Karen Greeson were in attendance, $240.00 of said money being the property of Gary Knight; $135.00 of said money being the property of Walter Snow; and $773.19 of said money being the property of Coburn Finance Corporation of North Carolina against the form of the statute in such case made and provided and against the peace and dignity of the State."

[8] The foregoing language is sufficient to apprise this defendant of the nature and details of the crime charged. We have

examined the "interrogatories" posed in this defendant's motion, and though much of the information requested might have been pertinent to his defense, we do not think that it appears that the trial judge abused his discretion in denying the motion, and the defendant McCutcheon's assignment of error pertaining thereto is overruled. It has not been shown that any of the evidence adduced at trial by the State was a surprise to the defendant or was not within his personal knowledge; therefore, no abuse of discretion has been shown. See *State v. McCabe* and *State v. Loften,* 1 N.C. App. 461, 162 S.E. 2d 66 (1968).

[9] The ninth question raised in the defendants' brief is stated as follows: "As to defendants Miller and Abbney, did the Court err in forcing the defendants to stand trial in prison clothes?" This question incorporates a misstatement of the facts as disclosed by the record and borders upon being frivolous. These defendants, in their brief, go further and contend:

> "The statute *explicitly* makes it unlawful for a defendant to be tried in prison clothes. G.S. 15-176. Yet the trial judge *forced* these two defendants to stand trial in such clothes. The statute reads in part that 'It shall be unlawful . . . and no person charged with a criminal offense shall be tried in any court while dressed in the uniform or dress of a prisoner or convict . . . . ' This could not be clearer. Failure to comply with this statute submitted the defendants to an ignominious defense and their chances of conviction were greatly increased. They were prejudiced by this action of the trial judge." (Emphasis added.)

We feel it is here appropriate to set out the entire statute, G.S. 15-176, including those portions that the defendants have omitted in their argument:

> "*Prisoner not to be tried in prison uniform.*—It shall be unlawful for any sheriff, jailer or other officer *to require* any person imprisoned in jail to appear in any court for trial dressed in the uniform or dress of a prisoner or convict, or in any uniform or apparel other than ordinary civilian's dress, or with shaven or clipped head. And no person charged with a criminal offense shall be tried in any court while dressed in the uniform or dress of a prisoner or convict, or in any uniform or apparel other than ordinary civilian's dress, or with head shaven or

clipped *by or under the direction and requirement* of any sheriff, jailer or other officer, unless the head was shaven or clipped while such person was serving a term of imprisonment for the commission of a crime.

Any sheriff, jailer or other officer who violates the provisions of this section shall be guilty of a misdemeanor." (Emphasis added.)

The record discloses that the defendants Miller, Abbney and McCutcheon, through their counsel, each objected to being placed on trial "in a gray shirt and gray trousers." (There is no evidence that a gray shirt and gray trousers are the uniform or dress of a prisoner or that they were anything other than ordinary civilian dress.) The record also shows that the State had offered to return to them the clothes they had on when they were arrested, that the defendants were offered the opportunity to obtain other clothing and that the defendants, through their respective counsel, refused to accept the return of clothing by the State or to obtain other attire. The motions in behalf of the defendants Abbney and Miller were overruled. (The record does not disclose whether the defendant McCutcheon was tried in "prison clothes," but no ruling was made as to his motion and no assignment of error appears in connection therewith.)

We fail to see how the trial judge "forced" these two defendants to stand trial in "prison clothes"; nor does G.S. 15-176 "explicitly" make it "unlawful for a defendant to be tried in prison clothes." If these defendants were each tried in "a gray shirt and gray trousers," it was entirely the result of their own refusal to wear the other clothing offered or to obtain other attire, and if they suffered prejudice as a result, it was entirely of their own making. The assignments of error in this regard are overruled.

[10] The question denominated "X" in the defendants' brief pertains only to the defendant Westry. This defendant contends therein that the trial judge erred in denying his counsel the right to cross-examine State's witness Gary Knight. This denial occurred during the voir dire examination of Knight. This examination was conducted solely to determine if his (and Greeson's and Snow's) testimony as to the identification of the defendants was tainted by prior out-of-court identification procedures and this was its entire scope. Knight had at no

time purported to identify the defendant Westry and did not do so at the trial. Counsel for the defendant Westry *was* permitted to cross-examine Knight *before the jury* and, in fact, did so. We hold that there was no prejudicial error committed when the trial judge sustained the State's objection to the cross-examination of Knight by Westry's counsel at the voir dire examination. It is quite true that Knight testified that four men were involved in the armed robbery, but the voir dire examination was not for the purpose of taking testimony in general but for the purpose of determining whether the witnesses could identify the specific defendants. This assignment of error is overruled. See also, 2 Strong, N. C. Index 2d, Criminal Law, § 88, p. 613, citing the holding in *State v. Hill,* 266 N.C. 103, 145 S.E. 2d 346 (1965), to the effect that no prejudicial error is committed where one defendant's counsel is not permitted to cross-examine a witness if counsel for a co-defendant is permitted full cross-examination inuring to the benefit of each of the defendants, all witnesses are fully examined and all features of the case are fully developed.

[11] The defendants' final contention is that, as to all of them, the trial court erred in failing to allow their motions for non-suit. This contention is without merit; the evidence of the guilt of these defendants was amply sufficient to warrant presentation of the case to the jury. In fact, the combination of eye-witness testimony, the physical evidence and the introduction into evidence of the weapons and of the fruits of the armed robbery found on the defendants' persons and in the vehicle in which they were riding was little short of overwhelming. We have carefully examined the lengthy record in this case on appeal, and we hold that these defendants received a trial that was full, fair and objective. In the trial in superior court, we find no prejudicial error.

No error.

Judges CAMPBELL and BROCK concur.