STATE OF NORTH CAROLINA v . TIMOTHY LAMONT JOHNSON

COA97-342

(Filed 20 January 1998)

1. **Criminal Law § 357 (NCI4th Rev.)— assault and robbery— jail identification wristband—required in court—motion to strike venire—denied**

    The trial court did not err in a prosecution for robbery and assault by denying defendant's motion to strike the jury venire on the grounds that members of the jury pool saw defendant wearing an identification wristband required by the Mecklenburg County jail. N.C.G.S. § 15-176 prohibits a jailer, sheriff or any other officer from requiring a prisoner to appear in court for trial dressed in the uniform of a prisoner, but the wristband is not a garment and did not constitute a uniform, dress, or apparel. Furthermore, defendant wore a suit during the trial and it is common knowledge that wristbands are required by other institutions such as hospitals, so that defendant would not have been prejudiced even if some members of the jury pool saw the wristband.

2. **Evidence and Witnesses § 1906 (NCI4th)— robbery and assault—photographic line-up—defendant's photo darker**

    The trial court did not err in a robbery and assault prosecution by denying defendant's motion to suppress an out-of-court photographic identification where the individuals in the lineup all

possessed physical characteristics similar to defendant's and, while defendant's photograph was one of two or three that were darker than the others, there is nothing to indicate that defendant's complexion was considered in constructing the lineup. Moreover, the witness had ample opportunity to observe the robbery and assault and there was no substantial likelihood of misidentification.

**3. Criminal Law § 111 (NCI4th Rev.)—robbery and assault— photographic line-up—motion to compel discovery— State's inability to locate**

The trial court did not err in a prosecution for assault and robbery by denying defendant's motion to compel discovery where defendant contended that the State had failed to provide him with a second photographic lineup allegedly presented to a witness at the time she made her identification. The State's effort to learn of the existence of the alleged second lineup complied with the requirements of *Kyles v. Whitley*, 514 U.S. 419.

**4. Criminal Law § 111 (NCI4th Rev.)— robbery and assault— victim's record—not disclosed**

The trial court did not err in a prosecution for robbery and assault by denying defendant's motion to compel the State to produce materials favorable to the defense where the State failed to provide before trial information regarding the victim's conviction of assault on a female and incarceration for a probation violation. The State learned of the incidents when the prosecutor spoke with the witness shortly before trial, the State elicited information about them on direct examination, and defendant was afforded the opportunity to inquire into them on cross-examination. In the context of the entire record, the failure to provide this information did not create a reasonable doubt that did not otherwise exist and there is no reasonable probability that the result would have been different had the information been disclosed.

**5. Evidence and Witnesses § 2983 (NCI4th)— robbery and assault—prior narcotics arrests—not admissible**

The trial court did not err in a prosecution for robbery and assault by denying defendant's motion to question the victim regarding his prior arrests for possession of marijuana with intent to sell and deliver and possession of cocaine with intent to sell and deliver where the victim denied on cross-examination

ever having possessed marijuana. Defendant was able to impeach the victim's credibility by questioning him about two prior convictions of possession of marijuana and other drug related activity, rendering inquiry into the two additional arrests cumulative at best. Moreover, the two additional arrests show nothing beyond the fact that the victim was arrested and that there was insufficient evidence to proceed; they have no tendency to prove that he was guilty. N.C.G.S. §8C-1, Rule 609.

**6. Evidence and Witnesses § 2485 (NCI4th)— assault and robbery—sequestration of witnesses—conversation outside of court—no prejudice**

The trial court did not abuse its discretion by denying defendant's motion to preclude further testimony from witnesses in a prosecution for assault and robbery where the court had issued a sequestration order and two witnesses spoke with each other outside of court after one had testified and the other had given her statement to an officer. Even assuming that the conversations violated the trial court's sequestration order, defendant's right to a fair trial was not prejudiced because there was no indication that their testimony was in any way influenced by their conversations.

Appeal by defendant from judgment entered 13 September 1996 by Judge Hollis M. Owens in Mecklenburg County Superior Court. Heard in the Court of Appeals 20 November 1997.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Hilda Burnett-Baker, for the State.*

*Charles L. Morgan, Jr., for defendant appellant.*

SMITH, Judge.

The State's evidence tended to show that on 14 December 1995, the victim, Lazarious Little, was visiting his grandmother at approximately 4:00 p.m. As Little left his grandmother's house and walked to his vehicle, he was approached by defendant. Defendant asked Little for money, but Little responded he had no money. Defendant then pulled out a gun and fired twice, once in the air and once at Little, striking him in the knee. As Little fell to the ground, defendant grabbed the gold chain necklace Little was wearing around his neck. Defendant also removed a gold ring from Little's finger. Defendant then walked up the street, got into a vehicle and left the scene.

Defendant was charged with and convicted of robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury. The offenses were consolidated for judgment and defendant was sentenced to a minimum of 117 months' and a maximum of 150 months' imprisonment.

[1] In his first assignment of error, defendant contends the trial court erred by denying his motion to strike the venire on the ground that members of the jury pool saw defendant partially attired in prison garb in violation of N.C. Gen. Stat. § 15-176 (Cum. Supp. 1996). Specifically, defendant points out that he was required by the Mecklenburg County Jail to wear an identification wristband in front of members of the jury pool. Defendant argues that his wearing the wristband in front of the potential jurors predisposed them to find him guilty of the offenses with which he had been charged, and he therefore did not receive a fair trial.

N.C. Gen. Stat. § 15-176 provides in pertinent part:

It shall be unlawful for any sheriff, jailer or other officer to require any person imprisoned in jail to appear in any court for trial dressed in the uniform or dress of a prisoner or convict, or in any uniform or apparel other than ordinary civilian's dress, or with shaven or clipped head. And no person charged with a criminal offense shall be tried in any court while dressed in the uniform or dress of a prisoner or convict, or in any uniform or apparel other than ordinary civilian's dress, or with head shaven or clipped by or under the direction and requirement of any sheriff, jailer or other officer, unless the head was shaven or clipped while such person was serving a term of imprisonment for the commission of a crime.

"[W]hile it is unlawful for any sheriff, jailer or other officer *to require* a prisoner to appear in court for trial dressed in the uniform of a prisoner, it is not necessarily unlawful for a prisoner to so appear." *State v. Berry*, 51 N.C. App. 97, 101-02, 275 S.E.2d 269, 272, *appeal dismissed and disc. review denied*, 303 N.C. 182, 280 S.E.2d 454 (1981); *see also State v. Westry*, 15 N.C. App. 1, 13, 189 S.E.2d 618, 626, *cert. denied*, 281 N.C. 763, 191 S.E.2d 360 (1972) ("nor does G.S. § 15-176 'explicitly' make it 'unlawful for a defendant to be tried in prison clothes' ").

In addressing this issue, we find the definitions of the words used in N.C. Gen. Stat. § 15-176, "uniform," "dress" and "apparel," to be significant. "Uniform" is defined as "dress of a distinctive design or fash-

STATE v. JOHNSON

[128 N.C. App. 361 (1998)]

ion adopted by or prescribed for members of a particular group . . . and serving as a means of identification." Webster's Third New International Dictionary 2498 (3d ed. 1971). "Dress" is defined as "utilitarian or ornamental covering for the human body: as a: clothing and accessories suitable to a specific purpose or occasion . . . c: style of clothing: manner of wearing clothes . . . covering, adornment or appearance that is appropriate or peculiar to a particular time or season . . . ." *Id.* at 689. "Apparel" is defined as "2a: a person's clothing . . . b: something that clothes or adorns as if with garments . . . ." *Id.* at 102.

The definitions of "uniform," "dress" and "apparel" clearly refer to garments and particular modes of dressing. Since an identification wristband is not a garment, we conclude it does not constitute "dress," "apparel" or a "uniform" for purposes of N.C. Gen. Stat. § 15-176.

Further, the record reflects that during his trial, defendant wore a suit and a shirt, which is obviously not the uniform of a prisoner. It is common knowledge that institutions other than jails, such as hospitals, require their charges to wear wristbands for the mere purpose of identification. Even if some members of the jury pool saw defendant wearing the identification wristband, he would not have been prejudiced.

[2] In his second assignment of error, defendant contends the trial court erred by denying his motion to suppress the out-of-court identification made of him by Chelita Little, Lazarious Little's cousin and a witness to the robbery and assault. Defendant argues that the photographic lineup presented to Ms. Little was impermissibly suggestive in that it represented him as having a darker complexion than the other individuals in the lineup, and, therefore, Ms. Little's identification of him should not have been admitted.

The State's evidence showed that, at the time of the robbery and assault, Ms. Little was sitting on the front porch of her grandmother's house. It was approximately 4:30 in the afternoon and the sun was out. Ms. Little saw defendant approach Lazarious Little, heard gunshots, and also saw defendant take Little's ring. She viewed the incident through the slightly tinted windows of Little's vehicle but had a direct view of Little when he was on the ground. A few months later, Officer B.J. Thomas of the Charlotte-Mecklenburg Police Department showed her a black and white photographic lineup containing six photographs, including one of defendant. The individuals in the

lineup had physical characteristics similar to defendant in terms of age, facial hair and hair length. Ms. Little immediately identified defendant as the assailant. Officer Thomas testified that the photographic lineup was lighter around the corners because of the photocopy machine, that the machine made some photographs darker than others, and that defendant's photograph was one of two or three that were darker than the others.

The United States Supreme Court has adopted a two-part test for determining whether the admission of an out-of-court identification violates due process: (1) whether the police used an impermissibly suggestive procedure to obtain the identification, and, if so, (2) whether, under all the circumstances, the suggestive procedure gave rise to a substantial likelihood of misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 107, 53 L. Ed. 2d 140, 149 (1977). The factors to be considered with respect to the second inquiry include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id.* at 114, 53 L. Ed. 2d at 154. Against these factors must be weighed the corrupting effect of the suggestive identification. *Id.*

After reviewing the record, we conclude the photographic lineup presented to Ms. Little was not impermissibly suggestive. The individuals in the lineup all possessed physical characteristics similar to those of defendant. While defendant's photograph was one of two or three photographs that were darker than the others, there is nothing in the record to indicate defendant's complexion was considered by Officer Thomas in constructing the lineup. Even assuming the appearance of defendant's complexion rendered the lineup impermissibly suggestive, Ms. Little's identification would have been properly admitted. Ms. Little had ample opportunity to observe the robbery and assault. She viewed the incident, which occurred on a sunny day, through a slightly tinted vehicle window, and also had a direct view of Lazarious Little when he was on the ground. Officer Thomas presented her with the lineup approximately three months after the incident, and she immediately identified defendant as the assailant. Because these factors far outweigh any corrupting effect the appearance of defendant's complexion may have had, we perceive no substantial likelihood of misidentification in this case. The trial court thus properly denied defendant's motion to suppress the identification.

STATE v. JOHNSON

[128 N.C. App. 361 (1998)]

**[3]** In his third assignment of error, defendant contends the trial court erred by denying his motion to compel discovery pursuant to *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215 (1963); *United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342 (1976); and *State v. Hardy,* 293 N.C. 105, 235 S.E.2d 828 (1977). In particular, defendant argues the State failed to provide him with a second photographic lineup allegedly presented to Chelita Little by Officer Thomas at the time she made her identification of defendant as the assailant. Defendant claims his ability to defend himself was substantially prejudiced by the State's failure to provide him with this second photographic lineup since it may have assisted in demonstrating the suggestiveness of the procedure used to obtain Ms. Little's identification of him as the assailant.

In *Brady,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 10 L. Ed. 2d at 218. The Court recently broadened the State's obligation in *Kyles v. Whitley,* 514 U.S. 419, 437, 131 L. Ed. 2d 490, 508 (1995), to encompass the "duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." However, there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." *Moore v. Illinois,* 408 U.S. 786, 795, 33 L. Ed. 2d 706, 713, *reh'g denied,* 409 U.S. 897, 34 L. Ed. 2d 155 (1972).

While in the instant case Ms. Little testified she was shown two sets of six photographs by Officer Thomas, Officer Thomas testified he only created one photographic lineup consisting of six pictures, including defendant's. The State, after unsuccessfully attempting to locate the second lineup, reviewed its files and even contacted Officer Thomas to confirm there were no reports missing from his file. Ultimately, the State was unable to discover a second lineup. We conclude the State's effort to learn of the existence of the alleged second lineup complied with the requirements imposed by *Kyles,* and the trial court therefore properly denied defendant's motion to compel discovery.

**[4]** In his fourth assignment of error, defendant contends the trial court erred by denying his motion pursuant to *Brady* requesting the State produce any and all materials favorable to his defense. Specifically, defendant argues the State failed to provide him with

information regarding Lazarious Little's conviction of assault on a female and incarceration for a probation violation prior to trial, and that such failure prejudiced his ability to properly cross-examine Little.

In *Agurs*, 427 U.S. at 109-10, 49 L. Ed. 2d at 353, the United States Supreme Court, while discussing the appropriate standard to be applied in determining whether a prosecutor has violated the constitutional duty of disclosure of favorable materials, stated that "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." The Court expressly rejected the imposition of a standard of materiality which focused on the impact of the undisclosed evidence on a defendant's ability to prepare for trial, but instead observed that:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record.

*Id.* at 112, 49 L. Ed. 2d at 354-55. The Court later clarified this standard of materiality by stating that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494 (1985).

In the instant case, the State indicated it reviewed Little's record and the computer bank did not show his conviction for assault on a female and subsequent probation violation. The State learned of these incidents when the prosecutor spoke with him shortly before trial. Further, the State asked Little about his criminal record on direct examination and elicited information regarding these incidents. Defendant was then afforded the opportunity on cross-examination to inquire into these incidents. In the context of the entire record, we conclude the State's failure to provide defendant with information regarding Little's conviction for assault on a female and subsequent probation violation did not create a reasonable doubt in the case that did not otherwise exist. We further conclude there is no

reasonable probability that had this information been disclosed to the defense, the result of the proceeding would have been different. The trial court therefore properly denied defendant's motion requesting the State produce all materials favorable to defendant.

**[5]** In his fifth assignment of error, defendant contends the trial court erred by denying his motion to question Little regarding Little's prior arrests for possession of marijuana with intent to sell and deliver and possession of cocaine with intent to sell and deliver, both of which charges were ultimately dismissed. Defendant argues that, since Little denied on cross-examination ever having possessed marijuana, evidence concerning these two arrests would have been relevant to impeach him despite the fact the charges were ultimately dismissed.

While N.C. Gen. Stat. § 8C-1, Rule 609 (1992) permits the introduction of convictions of crimes punishable by more than 60 days' confinement for the purpose of attacking the credibility of a witness, "[t]he general rule regarding evidence of prior charges and indictments is that '[a]ccusations that [a witness] has committed other extrinsic crimes are generally inadmissible even if evidence that [the witness] actually committed the crimes would have been admissible.' " *State v. Mills*, 332 N.C. 392, 407, 420 S.E.2d 114, 121 (1992) (quoting *State v. Meekins*, 326 N.C. 689, 699, 392 S.E.2d 346, 351 (1990)). In the instant case, when Little responded that he had never possessed marijuana, defendant was able to impeach his credibility by questioning him about two prior convictions for possession of marijuana, in addition to questioning him about other drug related activity. Thus, the effect for impeachment purposes of inquiring into the two additional arrests would have been cumulative at best.

Moreover, evidence of the two arrests would not have been relevant for the purpose of impeaching Little. Evidence is considered relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1992). The two additional arrests show nothing beyond the fact that Little was arrested and that there was insufficient evidence to proceed with the charges; they have no tendency to prove he was guilty of the offenses with which he was charged. Thus, the trial court properly denied defendant's motion to question Little about these two arrests.

**[6]** In his final assignment of error, defendant contends the trial court erred by denying his motion to preclude further testimony from

Chelita Little, Sholanda Ashe and Officer Thomas for violating the trial court's sequestration order issued 9 September 1996. The record indicates that on 10 September 1996, the State called Chelita Little to the stand to testify against defendant. When court recessed for the day, she was not released as a witness. Thereafter, the prosecutor had a conversation with Ms. Little during which he asked her the name and address of Ms. Ashe, who was also to be called as a witness. The prosecutor instructed Ms. Little to contact Ms. Ashe and inform her that a police officer would be coming to her home to take her statement about the robbery and assault. Ms. Little did in fact call Ms. Ashe and informed her an officer would be stopping by her house. Officer Thomas later visited Ms. Ashe and took her statement. While doing so, he provided her with the date and month of the robbery and assault. After Officer Thomas left, Ms. Ashe called Ms. Little and informed her of what she had relayed to Officer Thomas. Ms. Little agreed with her about the specifics of the case. Defendant argues the conversations between Ms. Little and Ms. Ashe and Officer Thomas and Ms. Ashe violated the sequestration order, tainted their further testimony and denied him the right to a fair trial.

Both N.C. Gen. Stat. § 8C-1, Rule 615 (1992) and N.C. Gen. Stat. § 15A-1225 (1988) state that upon the request of a party the trial court may order witnesses sequestered to prohibit them from hearing the testimony of other witnesses. "The aim of sequestration is two-fold: First, it acts as a restraint on witnesses tailoring their testimony to that of earlier witnesses, and second, it aids in detecting testimony that is less than candid." *State v. Harrell*, 67 N.C. App. 57, 64, 312 S.E.2d 230, 236 (1984). However, "[a]n order to sequester witnesses is issued in the sound discretion of the trial judge. . . . [I]f the order is disobeyed, the court can exclude the witness from testifying." *State v. Sings*, 35 N.C. App. 1, 3, 240 S.E.2d 471, 472 (1978).

Even assuming that the conversations between Ms. Little and Ms. Ashe and Officer Thomas and Ms. Ashe violated the sequestration order, defendant's right to a fair trial was not prejudiced by the trial court's denial of his motion to preclude further testimony from these witnesses. Ms. Little testified extensively about the robbery and assault prior to her conversations with Ms. Ashe, and Ms. Ashe gave her statement to Officer Thomas prior to her conversation with Ms. Little about the specifics of the case. There is no indication that Ms. Little's or Ms. Ashe's testimony was in any way influenced by their conversations. Further, the only information provided by Officer Thomas to Ms. Ashe was the date of the robbery and assault. We do

not believe Ms. Ashe's testimony could have been tainted by Officer Thomas supplying her with this information. Thus, the trial court did not abuse its discretion in denying defendant's motion to preclude further testimony from these witnesses.

For the above reasons, we conclude defendant received a fair trial, free from prejudicial error.

No error.

Judges MARTIN, John C., and JOHN concur.