State v. Connley

---

STATE OF NORTH CAROLINA    )
       v.                     )           ORDER ON REMAND
RUBEN SONNY CONNLEY     )

No. 124

(Filed 12 July 1979)

1. **Constitutional Law § 49— waiver of counsel—express statement not required**

Under *Miranda v. Arizona*, 384 U.S. 436, a specific relinquishment is not prerequisite to a finding of waiver of counsel.

2. **Criminal Law § 75.12; Constitutional Law § 49— right to counsel—no express waiver—waiver sufficient**

Evidence was sufficient to support the trial court's conclusion that defendant waived his right to counsel, though he did not expressly do so, where such evidence tended to show that defendant was advised of his rights, and after refusing to sign a waiver form, freely and voluntarily chose to talk with an FBI agent; defendant ignored the questions he did not want to answer and the agent exerted no pressure to make him answer; and as soon as defendant said he wanted to talk to his lawyer, all questioning ceased.

3. **Criminal Law § 76.7— finding that confession was voluntary—hearsay testimony—sufficiency of evidence to support findings**

Though the trial court's legal conclusion that defendant's statements were voluntarily made could not be upheld on the basis of the court's finding concerning a doctor's appraisal of defendant's condition since that finding was based on incompetent hearsay, the court's remaining findings were sufficient to justify its conclusion that defendant's statements were voluntarily made where such findings were that defendant's statement made to an FBI agent was made in response to questions asked; the responses were in keeping with the questions asked; and, although defendant from time to time refused to respond, the responses given were nevertheless appropriate.

THIS case is before us on remand from the Supreme Court of the United States "for further consideration in light of *North Carolina v. Butler*, 441 U.S. --- (1979)." *North Carolina v. Connley*, 441 U.S. ---, 60 L.Ed. 2d ---, 99 S.Ct. 2046 (1979).

SHARP; Chief Justice.

Defendant Connley was indicted under N.C. Gen. Stat. § 15-144 (1978) for the murder of Garland W. Fisher, a Virginia State patrolman, at a roadblock on Interstate Highway No. 85 on 15 November 1976. At the 14 March 1977 special criminal session of GRANVILLE the jury returned a verdict of guilty of first degree murder and defendant was sentenced to life imprisonment.

[1]  Upon defendant's appeal to this Court we ordered a new trial on the ground that defendant's incriminating statements, made during his in-custody interrogation on the night of the homicide, were improperly admitted in evidence because he had not *specifically* waived his right to have counsel present. *State v. Connley*, 295 N.C. 327, 245 S.E. 2d 663 (1978), *judg't vacated and case remanded*, 99 S.Ct. 2046 (1979).

This Court's ruling in *Connley* was based upon our interpretation of the following pronouncement which Chief Justice Warren made in the majority opinion in *Miranda v. Arizona*, 384 U.S. 436, 470, 16 L.Ed. 2d 694, 721, 86 S.Ct. 1602, 1626 (1966): "[H]is [the accused's] failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation can be recognized unless *specifically* made after the warnings we here delineate have been given." (Emphasis ours.)

We interpreted the foregoing statement as requiring an express waiver of counsel prior to police interrogation and thereafter ordered a new trial in any case in which the State, without having first shown defendant's clear-cut waiver of counsel, was permitted to introduce in evidence the defendant's incriminating statements made during an in-custody interrogation.[1] *State v. Butler* and the instant case were among those in which we granted new trials. *State v. Butler*, 295 N.C. 250, 244 S.E. 2d

---

1. See, e.g., *State v. Blackmon*, 280 N.C. 42, 185 S.E. 2d 123 (1971); *State v. Thorpe*, 274 N.C. 457, 164 S.E. 2d 171 (1968); and the cases cited in *State v. Connley*, 295 N.C. at 338, 244 S.E. 2d at 670.

410 (1978), *judg't vacated and case remanded,* 99 S.Ct. 1755 (1979). In both *Butler* and *Connley* the State of North Carolina petitioned the Supreme Court for certiorari. In each case, the Supreme Court granted the petitions and vacated our judgment awarding a new trial. It then directed reconsideration of both cases in light of its opinion in *Butler.*

The Supreme Court said in *Butler* that we had erred in our reading of the *Miranda* opinion and that "the Court did not hold that such an express statement is indispensable to a finding of waiver [of counsel]." In further explanation, Mr. Justice Stewart, speaking for the majority, said:

"An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights dilineated in the *Miranda* case. As was unequivocally said in *Miranda,* mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the persons interrogated." *North Carolina v. Butler,* 441 U.S. ---, ---, 60 L.Ed. 2d 286, 292, 99 S.Ct. 1755, 1757 (1979).

As directed, we now proceed to reconsider Connley's case in light of the preceding pronouncement and to determine de novo whether defendant's actions and words preceding and during his interrogation clearly implied a waiver of his right to counsel and to remain silent.

At the trial Victor Holdren, Special Agent of the Federal Bureau of Investigation, testified as follows:

"I had occasion to talk with Ruben Sonny Connley at approximately 4:00 and 5:00 a.m. on November 15, 1976, in the emergency room at Duke Medical Center in Durham. I asked him if he would talk to me and he said he would. I furnished him an Advice of Rights form. He held up his right hand, which was bandaged;

State v. Connley

so I held the form for him and gave him time to read the statement. Thereafter I read it to him and asked him if he understood what his rights were under the constitution and he stated to me, 'I know what it says and I understand, but I'm not going to sign it.'"

At that point in Holdren's testimony defendant objected to the admission in evidence of his statements to the FBI agent, and the judge conducted a voir dire to determine their admissibility. In pertinent part, Agent Holdren's additional testimony is summarized or quoted below. Defendant offered no evidence on voir dire.

Before attempting to talk with Connley, Holdren had consulted Dr. W. R. Belts, one of defendant's attending physicians, to determine whether defendant would be able to talk to him. Holdren testified, "He [Dr. Belts] said that Connley was in a stable condition; that he had received no medication to sedate him at all, and that he was alert and entirely capable of talking to me about this. I observed that Mr. Connley was alert and responded to the questions in a normal, rational way.

". . . The defendant appeared to be coherent. At times he would close his eyes, but would continue to respond to the questions.. . . [O]n a few occasions during the interview when I asked him a question he would not say anything. I did not offer him any threat or promises or hope of reward of any type. I did not attempt to coerce him to give me any statement.

". . . He appeared to be alert because he responded to the questions I asked him. I was with him 18 minutes. I based my opinion as to whether he was alert on what the doctor had said to me outside and the fact that he responded."

After having stated that he understood his constitutional rights but that he would not sign the "Advice of Rights" form, defendant proceeded, forthwith, to tell his story in appropriate answers to Holdren's questions. The narrative began with his departure from Atlanta, Georgia, on 14 November 1976 for Baltimore, Maryland, and continued through his activities during his stay in Baltimore and his encounter with Virginia State Trooper Fisher as he was driving back to Atlanta. Defendant told how he kidnapped Trooper Fisher and commandeered his patrol

car, and he recounted some of their conversation up to the time they arrived at the roadblock in North Carolina. At that point, Holdren testified, "He [Connley] said he would like to talk with his mouthpiece, and I took that to mean his attorney and we terminated the interview."

The trial judge found the facts to be in accordance with Holdren's testimony. Based upon that testimony he found and concluded, inter alia:

"[T]hat while the defendant did not specifically make the affirmative statement . . . that he did not desire to have an attorney present, he nevertheless fully was advised of his rights to have an attorney present and knew and understood his right to have an attorney present before he answered any questions put to him by Officer Holdren. And the Court finds as a fact from the totality of these surrounding circumstances that he did in fact waive his right to an attorney and his other constitutional rights as explained by Officer Holdren.

". . . [T]hat defendant did knowingly, understandingly, voluntarily and without threat, promises, coercion of any kind, willingly, intelligently and intentionally answer questions asked him by Officer Holdren, and that the statement . . . the defendant [made] to Officer Holdren was knowingly [and] voluntarily . . . made with a full understanding of his . . . constitutional rights . . . and that the statements made by defendant to the officer should . . . be admitted in evidence against him." ·

[2] In light of *North Carolina v. Butler*, supra, we now hold that the trial judge's conclusion that Connley "did in fact waive his right to an attorney and his other constitutional rights" is fully supported by the evidence. Although Connley did not expressly waive his rights, "waiver can clearly be inferred from [his] actions and words." Equally applicable to defendant Connley is the statement which Mr. Justice Stewart made with reference to defendant Butler: "There is no doubt that this respondent was adequately and effectively apprised of his rights." 441 U.S. at ---, 60 L.Ed. 2d at 293, 99 S.Ct. at 1758. There can also be no doubt that Connley, after refusing to sign the waiver form, freely and voluntarily chose to talk with the agent; that he ignored the questions he did not want to answer and that Holdren exerted no

pressure to make him answer. As soon as defendant said he wanted to talk to his lawyer, all questioning ceased.

We therefore reverse our holding that defendant's statements to Agent Holdren were erroneously admitted and that defendant is entitled to a new trial because of the admission of these statements.

[3] On defendant's appeal to this Court his assignment of error No. 2 asserted that the trial judge erred in admitting, over his objection, Special Agent Holdren's statement on voir dire that Dr. Belts, had "said that Connley was in a stable condition; that he had received no medication to sedate him at all, and that he was alert and entirely capable of talking to [Holdren] about this." ·

As we pointed out in our opinion[2], the admission of this hearsay testimony from Agent Holdren was clearly error. However, because we were ordering a new trial on account of the admission of Connley's in-custody statements we said, "[W]e need not determine whether the court's findings as to what Dr. Belts told Holdren with reference to defendant's condition constituted prejudicial error. *See State v. Patterson*, 288 N.C. 553, 566-67, 220 S.E. 2d 600, 610 (1975)." 295 N.C. at 336, 245 S.E. 2d at 669. This comment was intended as a warning to the judge presiding at the next trial not to repeat this error, and the specific citation to *State v. Patterson* suggested our impression that without the incompetent evidence the judge's finding on voir dire would have been the same.

Since we now hold, in the light of *North Carolina v. Butler*, supra, that defendant validly waived his *Miranda* rights, it becomes necessary to determine whether the error committed by the trial judge in admitting Special Agent Holdren's testimony constitutes prejudicial error requiring a new trial.

The rules governing appellate review of a voir dire conducted to determine the voluntariness of a confession were well summarized by Justice Branch in *State v. Bishop*, 272 N.C. 283, 291, 158 S.E. 2d 511, 516-17 (1968):

"When a confession of a defendant is offered into evidence, and the defendant objects, the trial judge should then excuse the

---

2. *State v. Connley*, 295 N.C. at 335-36, 245 S.E. 2d at 668-69.

jury and in the absence of the jury hear the evidence of both the State and defendant upon the question of whether defendant, if he made an admission or confession, voluntarily and understandingly made the admission or confession. *State v. Rogers, supra; State v. Gray, supra; State v. Conyers,* 267 N.C. 618, 148 S.E. 2d 569.

"The general rule is that after such inquiry the trial judge shall make findings of fact to show the basis of his ruling on the admissibility of the evidence offered, and that the facts so found are conclusive on the appellate courts when supported by competent evidence. Nevertheless, the conclusions of law drawn from the facts found are not binding on the appellate courts. *State v. Hines,* 266 N.C. 1, 145 S.E. 2d 363; *State v. Walker,* 266 N.C. 269, 145 S.E. 2d 833; *State v. Conyers, supra.*" See also *State v. Harris,* 290 N.C. 681, 691, 228 S.E. 2d 437, 443 (1976); *State v. Thompson,* 287 N.C. 303, 317, 214 S.E. 2d 742, 751 (1975), *death sentence vacated,* 428 U.S. 908 (1976); *State v. Woodruff,* 259 N.C. 333, 337, 130 S.E. 2d 641, 644 (1963).

Clearly, the trial court's legal conclusion that defendant's statements were voluntarily made cannot be upheld on the basis of his factual finding concerning the doctor's appraisal of defendant's condition since that finding was based on incompetent hearsay. The general rule, however, is that "[i]n a trial before the court without a jury if there is sufficient competent evidence supporting the judgment or finding, the admission of incompetent evidence does not constitute reversible error." *Bizzell v. Bizzell,* 247 N.C. 590, 605, 101 S.E. 2d 668, 678 (1958). *See also State v. Patterson,* 288 N.C. 553, 566-67, 220 S.E. 2d 600, 610 (1975), *death sentence vacated,* 428 U.S. 904 (1976); *Cogdill v. Highway Comm.,* 279 N.C. 313, 320, 182 S.E. 2d 373, 377 (1971). The question confronting us, therefore, is whether the trial court's remaining findings of fact are sufficient to justify its legal conclusion that Connley's statements were voluntarily made. We hold that they are.

In addition to his findings of fact concerning the doctor's comments, the trial judge also determined as a fact: "That the statement made to Officer Holdren was made in response to questions asked, and that the responses were in keeping with the questions asked and [that] although the defendant from time to time refused to respond, nevertheless, the responses given were appropriate.

Snow v. Power Co.

"That at no time in the officer's presence has anyone threatened the defendant in any way, promised him anything or held out any hope of reward, and that the defendant was not in any manner coerced.

"That he appeared to the officer to be alert."

These findings of fact are amply supported by competent evidence, which included defendant's statement that he knew what the Advice of Rights form said and understood it. The judge's findings are uncontradicted by any other evidence in the record and they fully justify his conclusion that defendant's statements were knowingly, understandingly, and voluntarily made. We therefore overrule defendant's assignment of error No. 2.

Having previously adjudged defendant's remaining assignments of error to be without merit, we now find no error in defendant's trial before Thornburg, J., at the 14 March 1977 special criminal session of Granville, and reverse our order vacating the verdict and judgment rendered therein. Our former decision, as reported in 295 N.C. 327, 245 S.E. 2d 663, is modified in accordance with this opinion, and this cause is remanded to the Superior Court of Granville County with directions that commitment issue as provided by law to put the sentence into effect.

Former opinion modified; case remanded.