IN THE MATTER OF: ISIAH HORNE

No. 803DC671

(Filed 16 December 1980)

1. Infants § 17— juvenile delinquency proceeding — inculpatory statement — respondent advised of rights — voir dire — failure of court to make findings and conclusions

　　In a juvenile delinquency proceeding where it was alleged that respondent feloniously broke into and entered a grocery store and stole merchandise having a value of $230, there was no merit to respondent's contentions that he was not advised of his right to have a parent present before making an inculpatory statement during an in-custody interrogation, that he did not waive his rights, and that the court should have made findings of fact and conclusions of law in support of its order denying respondent's motion to suppress the statement, since the court properly conducted a voir dire hearing for the purpose of determining the admissibility of the

statement in question; the uncontradicted evidence at the hearing was that respondent was fully advised of his constitutional and statutory rights; and the court's failure to make findings of fact and conclusions of law in support of its order denying the motion was not reversible error, since no conflict of evidence existed at the hearing.

2. **Infants § 17; Constitutional Law § 77 — juvenile delinquency proceeding — respondent's waiver of rights**

There was no merit to respondent's contention that because the State failed to show a specific waiver of respondent's constitutional and statutory rights, it failed to sustain its burden of showing a knowing, willing and understanding waiver, since respondent was advised orally of his constitutional rights and his right to have a parent present during questioning; respondent read a copy of his constitutional rights, but that copy did not contain his right to have a parent present; respondent never signed a written waiver of his rights; but respondent stated that he understood his rights and then confessed to the crime.

3. **Infants § 18— juvenile delinquency proceeding — transcript of respondent's inculpatory statement — officer's testimony from own recollection**

In a juvenile delinquency proceeding respondent failed to show that the trial court abused its discretion in admitting testimony of an investigator regarding the substance of respondent's inculpatory statement, since the trial judge was in a position to determine whether the witness was merely reading from a written transcript of respondent's statement or was relying on his own recollection, and there was no indication in the record that the officer's testimony was not based on his own recollection of the statement which respondent made to him.

4. **Searches and Seizures § 10— juvenile delinquency proceeding — warrantless detention of respondent — officer's reasonable suspicion that respondent committed crime**

An officer had an honest and reasonable suspicion that respondent in a juvenile delinquency proceeding had committed the crime of larceny which justified the officer's detention of respondent where the evidence tended to show that officers heard a radio dispatch at 1:00 a.m. concerning suspicious characters pulling a wagon containing what appeared to be a television; upon sighting the described individuals, the officer stopped his car beside them whereupon one suspect fled; and the box on the wagon contained various merchandise which was in plain view.

5. **Searches and Seizures § 33— warrantless search of box in respondent's possession — items in plain view**

There was no merit to respondent's contention that the trial court erred in admitting into evidence merchandise found in respondent's possession on the ground that the officer who detained respondent had no authority to search the box in respondent's possession which contained the merchandise, since the cigar box in question was contained in a larger, open box along with various articles of merchandise and was in plain view; the fact that the officer opened the cigar box to find some identification was of no consequence; and respondent had no expectation of privacy with regard to the contents of the cigar box, as a cigar box is not normally used and was not being used by respondent as a repository of personal items.

6. **Infants § 18; Larceny § 7.2— juvenile accused of felonious larceny — identification of items in juvenile's possession**

In a juvenile delinquency proceeding where it was alleged that respondent

In re Horne

feloniously broke into and entered a grocery store and stole merchandise having a value of $230, there was no merit to respondent's contention that merchandise found in his possession was not sufficiently identified as the merchandise stolen from the store in question and the State therefore could not rely upon the doctrine of possession of recently stolen property to raise the presumption that respondent stole the missing items, since the grocery store owner's testimony identifying the goods as those taken from his store and the close proximity in time and location of the respondent and the goods to the crime scene were sufficient to raise a reasonable and logical inference that the goods found in respondent's possession were the goods stolen from the witness's store.

APPEAL by respondent from *Ragan, Judge.* Judgment entered 27 March 1980 in District Court, CRAVEN County. Heard in the Court of Appeals 13 November 1980.

This juvenile delinquency proceeding was commenced against the respondent, a fifteen-year-old boy, by a verified petition alleging that on 25 January 1980 Horne wilfully and feloniously broke into and entered a building occupied by E. C. Richardson, used as a grocery store, and stole and carried away merchandise having a value of $230.00 in violation of N.C. Gen Stat. §§ 14-54(a) and 14-72.

Evidence presented at the hearing tended to show that Officers T. R. Dunn and Claude I. Brantley, Jr., who were in separate patrol cars, responded to a radio transmission at about 1:00 a.m. on 25 January 1980 in New Bern. The transmission advised them that two black males had been observed pushing or pulling a wagon with a box or what looked like a television set on it. When Brantley arrived, he saw two black males pulling a wagon. One of them jumped a wall and fled when the officer stopped his car. The other, Isaiah Horne, remained by the wagon on which a large open box was sitting. Brantley saw cigarette cartons, candy and cookies in the box. He looked inside the box and opened a cigar box to see if he could discover from where the items came. He found a tax receipt to a Mr. Richardson. At that time, Horne was about a block and a half from Richardson's store. Brantley put the box and wagon in his patrol car, detained Isaiah Horne, and went to assist Dunn. In the meantime, Dunn had chased the fleeing suspect and had apprehended him. Dunn then started checking the area for a possible breaking and entering and discovered an open window and an open apartment door in Richardson's grocery store. The juveniles were taken to the police department where they were arrested. Dunn testified that Horne told him he had gone inside Richardson's store, had rifled through the merchandise and had put it in a box which he took to the railroad tracks and placed on a wagon.

E. C. Richardson, the grocery store proprietor, testified that he had given no one permission to enter his building on the night of 25 January 1980. The officers had taken him to his store on the night in question where he had noticed that some things were missing from his store and that things had been moved, but he was not sure what they were. He recognized the box and its contents as his property On cross-examination he stated that the big box had been shipped to him with dinner napkins in it. He admitted that probably thousands of such boxes had been shipped to other stores. Richardson had not stamped the cigarette cartons with prices and he testified that probably every store in New Bern had bought candy bars like those returned to him by the officers.

The court found respondent to be a delinquent child by reason of violation of G.S. 14-54(a) and G.S. 14-72 and sentenced respondent to serve a term of two years in the custody of the Division of Youth Services. Respondent appealed. Other pertinent facts appear in the body of the opinion.

*Attorney General Edmisten by Associate Attorney General Sarah C. Young, for the State.*

*Ward, Ward, Willey and Ward, by Joshua W. Willey, Jr., for the defendant-appellant.*

MARTIN (Robert M.), Judge.

[1]    Respondent assigns as error the trial court's failure to suppress an inculpatory statement made by him during in-custody interrogation and the subsequent admission of the statement into evidence over objection. Respondent contends he was not advised of his right to have a parent present, that he did not waive his rights and that the court should have made findings of fact and conclusions of law in support of its order denying respondent's motion to suppress the statement. After carefully scrutinizing the record on appeal, we find that respondent's contentions have no merit.

In *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R. 3d 974 (1966), the United States Supreme Court held that a suspect must be informed of his rights upon being arrested: the right to remain silent, the right to an attorney and that any statement made may be used as evidence against him. In addition to the above-mentioned constitutional rights, our legislature has granted to juveniles the additional right to have a parent, guardian or custodian

present during questioning. N.C. Gen. Stat. § 7A-595(a)(3). A defendant may effectively waive these rights if done voluntarily, knowingly, and intelligently. *Miranda v. Arizone, supra.* The State may not use evidence obtained as a result of custodial interrogation against the juvenile at trial unless and until it demonstrates that the warnings were made and that the juvenile knowingly, willingly and understandingly waived them. N.C. Gen. Stat. § 7A-595(d).

In the case *sub judice,* the court properly conducted a *voir dire* hearing for the purpose of determining the admissibility of the statement in question. The only person to testify at the hearing was Investigator Dunn. Prior to the *voir dire* hearing, Investigator Dunn testified that he had advised respondent orally of all of his constitutional rights as required by *Miranda v. Arizona, supra,* and of his right to have a parent present during questioning. Investigator Dunn testified that respondent had stated that he understood his rights and that respondent also had read a copy of his constitutional rights. During the *voir dire* hearing, Investigator Dunn testified that the written copy of his rights that respondent had read did not contain his right to have a parent present. The record indicates that the respondent never signed a written waiver of his rights. After being advised of his constitutional rights and stating that he understood them, the respondent confessed to the crime.

The uncontradicted evidence at the *voir dire* hearing was that the respondent was fully advised of his constitutional and statutory rights. In addition, the trial court's failure to make findings of fact and conclusions of law in support of its order denying respondent's motion to suppress is not reversible error. "When no material conflict in the evidence on *voir dire* exists, it is not error to admit a confession without making specific findings of fact, although the better practice is always to find all facts upon which the admissibility of the evidence depends." *State v. Siler,* 292 N.C. 543, 549, 234 S.E. 2d 733, 737 (1977). Therefore the only remaining question with regard to this assignment of error is whether the respondent knowingly, willingly and understandingly waived his rights.

[2] Respondent relies upon *Miranda v. Arizona, supra,* and *State v. Siler, supra,* in support of his argument that because the State failed to show a specific waiver of respondent's rights, it failed to sustain its burden of showing a knowing, willing and understanding waiver. We feel, however, that this case is governed by the later cases of *North Carolina v. Butler,* 441 U.S. 369, 60 L.Ed. 2d 286, 99 S.Ct. 1755 (1979)

and *State v. Connley,* 297 N.C. 584, 256 S.E. 2d 234, *cert. denied,* 444 U.S. 954 (1979). In *Butler,* the United States Supreme Court repudiated the North Carolina rule that the State must show an express written or oral statement of waiver of rights before a confession may properly be admitted into evidence. The *Butler* court stated that the question of whether a defendant knowingly, intelligently and voluntarily waived his rights must be determined on a case-by-case basis, based on the circumstances of each case. The court stated:

> An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but it is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights dilineated in the *Miranda* case. As was unequivocally said in *Miranda,* mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

441 U.S. at 373, 60 L.Ed. 2d at 292, 99 S.Ct. at 1757.

In *Butler,* the defendant was informed of his rights upon arrest, stated that he understood those rights, but refused to sign a written waiver. After stating "I will talk to you but I am not signing any form" he made inculpatory statements. 441 U.S. at 371, 60 L.Ed. 2d at 291, 99 S.Ct. at 1756. The Court found that under those circumstances the defendant's statements were admissible. In *Connley, supra,* the defendant was advised of his rights, stated that he understood those rights and refused to sign a written waiver. After stating "I know what it says and I understand, but I'm not going to sign it" defendant made inculpatory statements. 297 N.C. at 587, 256 S.E. 2d at 236. Our Supreme Court held that the defendant's statements were admissible.

We see no material distinction in the circumstances surrounding the waiver of rights in the case *sub judice* and those found in *Butler* and *Connley.* Therefore we hold that the trial court was correct in admitting the statement in question into evidence.

In re Horne

[3]    The respondent also contends that the trial court erred in admitting the testimony of Investigator Dunn regarding the substance of respondent's inculpatory statement. The record reveals that Investigator Dunn made a recording of respondent's statement which was subsequently transcribed by someone other than the officer and then erased. The respondent had neither acknowledged nor signed the statement. When Investigator Dunn began testifying by referring to the transcript, defense counsel, with the court's permission, asked the officer if he was reading from anything. The officer replied that he was. After stating that the witness could use the statement to refresh his recollection, the court allowed the officer to testify as to the substance of respondent's statement over defense counsel's objection. On cross-examination, defense counsel did not ask the officer whether his testimony had been based on his own recollection. Defense counsel did ask the officer "[t]hat piece of paper, that you refresh your memory with, what did the information on that piece of paper come from?" There is no indication in the record that the officer's testimony was not based on his own recollection of the statement which the respondent made to him.

Our Supreme Court held in *State v. Smith,* 291 N.C. 505, 231 S.E. 2d 663 (1977), that where there is doubt as to whether the witness is testifying from his own recollection, the use of the testimony depends upon the credibility of the witness and is a question for the trier of fact. Absent an abuse of discretion, the ruling of the trial court should not be disturbed on appeal. In the case *sub judice* the trial judge was in a position to determine whether the witness was merely reading from a written transcript of respondent's statement or relying on his own recollection. As respondent has failed to show any abuse of discretion, we will not disturb the trial court's ruling on appeal.

[4]    Respondent further assigns as error the trial court's admission of the merchandise found in the respondent's possession into evidence. Respondent first contends that the officer had no justification for detaining him and next contends that even if the detention was justified, the officer had no authority to search the box containing the merchandise. We disagree.

Our Supreme Court has stated:

"The brief detention of a citizen based upon an officer's reasonable suspicion that criminal activity may be afoot is permissible for the purpose of limited inquiry in the course of a routine

investigation, and any incriminating evidence which comes to that officer's attention during this period of detention may become a reasonable basis for effecting a valid arrest . . . ." (Citation omitted.)

*State v. Allen,* 282 N.C. 503, 508, 194 S.E. 2d 9, 13 (1973). This Court held in *State v. Bridges,* 35 N.C. App. 81, 84, 239 S.E. 2d 856, 858 (1978), that "a law officer . . . may lawfully detain a person where there is a need for immediate action, if, upon personal observation or reliable information, he has an honest and reasonable suspicion that the suspect either has committed or is preparing to commit a crime." The record discloses that the officers heard a radio dispatch at 1:00 a.m. concerning suspicious characters pulling a wagon containing what appeared to be a television. Upon sighting the described individuals, Officer Brantley stopped his car beside them, whereupon one suspect fled. The box on the wagon contained various merchandise which was in plain view. From the totality of these circumstances, we conclude that Officer Brantley had an honest and reasonable suspicion that the respondent had committed the crime of larceny which justified his detention of the respondent.

[5]   In addition, we do not think the search of the cigar box which revealed a tax receipt to Mr. Richardson was illegal. The constitutional guarantee against unreasonable searches and seizures does not prohibit the seizure and introduction into evidence of contraband materials when they are in plain view and require no search to discover them. *State v. Allen, supra.* In the case at bar, the cigar box was contained in a larger, open box, along with various articles of merchandise and was in plain view. The fact that the officer had to open the cigar box to find the tax receipt is of no consequence. The respondent had no expectation of privacy with regard to the contents of the cigar box. A cigar box is not normally used, and was not being used by respondent as a repository of personal items. Thus our recent decisions in *State v. Greenwood,* 47 N.C. App. 731, 268 S.E. 2d 835 (1980), *disc. rev. allowed* (filed 7 October 1980), holding that the contents of a pocketbook found on the rear seat of an automobile should have been suppressed, and *State v. Cole,* 46 N.C. App. 592, 265 S.E. 2d 507, *rev. denied,* 301 N.C. 96 (1980), holding that the warrantless search of a jacket found in the trunk of a car was in violation of the Fourth Amendment, are distinguishable.

[6]   Finally, respondent assigns as error the trial court's denial of his

motion to dismiss the charge of larceny at the end of the State's evidence. He contends that the merchandise found in his possession was not sufficiently identified as the merchandise stolen from the store of E. C. Richardson and therefore the State could not rely upon the doctrine of recent possession to raise the presumption that the respondent stole the items in question.

It is axiomatic that "[t]he identity of the fruits of the crime must be established before the presumption of recent possession can apply. The presumption is not in aid of identifying or locating the stolen property, but in tracking down the thief upon its discovery." *State v. Jones,* 227 N.C. 47, 49, 40 S.E. 2d 458, 460 (1946); *in accord, State v. Foster,* 268 N.C. 480, 151 S.E. 2d 62 (1966). Respondent argues that because Mr. Richardson admitted that there were no markings on the items of merchandise that would distinguish them from other similar merchandise sold at other stores, the merchandise was not sufficiently identified as that stolen from Mr. Richardson. We disagree. At the trial, Mr. Richardson was asked, "Did you recognize the contents [of the box]?" He replied "Every bit of it. I was the man that owned that property, me and my wife."

It is not necessary that stolen property be unique to be identifiable. Often stolen property consists of items which are almost devoid of identifying features, such as goods which are mass produced and nationally distributed under a brand name. When such items are the proceeds of a larceny their identity must necessarily be drawn from other facts satisfactorily proved. *State v. Crawford,* 27 N.C. App. 414, 219 S.E. 2d 248 *rev. denied,* 288 N.C. 732, 220 S.E. 2d 621 (1975). In the case *sub judice,* Mr. Richardson's testimony identifying the goods as those taken from his store and the close proximity in time and location of the defendant and the goods to the robbery site were sufficient to raise a reasonable and logical inference that the goods found in the respondent's possession were the goods stolen from Mr. Richardson's store. Moreover, respondent confessed to his participation in the crime. Therefore, respondent's motion for dismissal was properly denied.

In the trial we find no prejudicial error.

No error.

Judges VAUGHN and WELLS concur.