HUNTER, Judge.
John D. Parker ("defendant") was found guilty of common law robbery and was sentenced by the trial court to an active prison term of sixteen to eighteen months. On appeal, defendant challenges the trial court's denial of his motion to suppress the complaining witness' pretrial and in-court identifications of defendant, as well as currency and a check for $62.40 belonging to the witness which were found by police on defendant's person during a search incident to his arrest. Accordingly, we limit our discussion to the pre-trial proceeding on defendant's motion.
Durham Police Officer J. L. Honeycutt ("Honeycutt") testified that on the morning of 7 March 2003, he was dispatched to the Inand Out Food Mart ("the In and Out") on Fayetteville Street in Durham, North Carolina. He arrived at the In and Out at 9:11 a.m., "[a]pproximately three or four minutes" after receiving the dispatcher's call, and spoke to Winford Edwards, who claimed he had been robbed. Edwards had sustained injuries including a bloody nose and was still bleeding. Edwards described the robber to Honeycutt as "a tall, black male, about six f[ee]t tall, wearing a black and white jacket and black pants." A store employee advised Honeycutt that the suspect ran towards the Fayetteville Street housing projects. Honeycutt drove through the housing projects in his patrol car. Less than five minutes after speaking to Edwards, Honeycutt "located a tall, black male in a white and black colored jacket and black jeans[,]" later determined to be defendant, approximately 100 to 150 yards from the In and Out. A second man was in the vicinity with defendant, but Honeycutt did not observe him carefully and did not determine if the two men were together. Honeycutt parked his car approximately thirty feet away from defendant and began walking toward him. Approached by the uniformed officer, defendant "took off running east through the yards of the housing development." Honeycutt pursued defendant on foot, announcing that he was with the Durham Police Department and ordering defendant to stop. Defendant led Honeycutt on a three to four minute chase through a wooded area and across two streets before he "kind of gave up" as the officer "was catching up" to him. Upon handcuffing defendant, Honeycutt "searched inside his pockets" and found a check for $62.00 and currency consistingprimarily of $1.00 bills. A second officer placed the handcuffed defendant in the back of a patrol car and transported him back to the In and Out. Honeycutt then returned to the store and gave the money and check found on defendant to Officer Reaves. He estimated he had spent no more than fifteen minutes in the housing projects before returning to the In and Out. Honeycutt also noted that "the sun was shining" on the morning in question.
Edwards, a self-employed sandwich wholesaler, testified that he went to the In and Out just before 9:00 a.m. on 7 March 2003, during his daily delivery route. As he entered the store, he noticed two men standing by the front door. When Edwards walked back to his truck to pack the store's sandwich order, defendant grabbed him from behind, threw him to the ground, and "tried to get money out of [his] shirt pocket." Edwards grabbed his shirt pocket with both hands to prevent the theft. In response, defendant "beat [Edwards'] head into the asphalt" until he surrendered the money. Stolen from Edwards' pocket were "a lot of one-dollar bills, a [twenty]-dollar bill, and one check made out to Made-Right Sandwich Company." Defendant's associate kicked Edwards in the ribs and poured coffee on his face. After the robbery, the two men "took off running down through the projects." Within thirty seconds, Edwards flagged down a police car which was driving down Fayetteville Street, reported the robbery to the officer, and provided a description of his assailant. Five minutes later, the officer returned with defendant in the back of his patrol car. From a distance of six to eight feet, Edwards identified defendantas "one of the men that had jumped me." Defendant was clad in the black pants and the "white and black or yellow and black" striped coat which Edwards had described to the officer.
Edwards estimated the robbery lasted "a minute[,]" but claimed he had seen defendant "clearly" each time his "head c[a]me up off the asphalt." He sustained "two black eyes, a bloody nose, and abrasions on the right side of [his] face" during the assault, and was still bleeding heavily from the nose when he identified defendant for police as the robber. When presenting defendant to Edwards, the officer asked, "`[i]s this the man?'" Edwards recognized defendant and responded "[r]ight away." After he had identified defendant, an officer asked Edwards to go to the police station, where he identified the check and currency recovered from defendant. Edwards was first told about the money by police "when they finished up at the In and Out," which he estimated as being "about [thirty] minutes after the robbery[.]"
The trial court questioned Edwards further concerning his ability to observe his assailant during the robbery, as follows:
[THE COURT:] Mr. Edwards, would you have been able to identify the defendant as the person who assaulted you even if the police had not have found him that morning and brought him back to [the] store?
THE WITNESS: Yes.
THE COURT: You got a sufficient opportunity to see him, look at him, and know the person . . . who assaulted you so that you could identify him in this courtroom?
THE WITNESS: Yes.Edwards also confirmed that he had observed defendant standing by the front door of the In and Out when he first went into the store. Defendant offered no evidence at the suppression hearing.
The trial court denied defendant's motion to suppress both Edwards' show-up identification and in-court identification of defendant, as well as the currency and check found on defendant's person by Officer Honeycutt. It noted that Edwards "said he saw [defendant] when he went into the store, and he saw him when he was assaulted, and he saw him run away." Although the court announced its intention to "make specific findings of fact and conclusions of law later in this proceeding[,]" the record on appeal does not contain any such material. It appears the court may have forgotten to enter its findings and conclusions.
We note initially that the trial court's apparent failure to enter findings of fact and conclusions of law is not reversible error in this case, because there was no material conflict in the evidence adduced at the suppression hearing. See State v. Riddick, 291 N.C. 399, 408, 230 S.E.2d 506, 512 (1976); In re Horne, 50 N.C. App. 97, 101, 272 S.E.2d 905, 908 (1980). The necessary findings are deemed to be implicit in the trial court's ruling to admit the challenged evidence. See State v. Whitley, 288 N.C. 106, 110, 215 S.E.2d 568, 571 (1975). The issue before this Court is whether the undisputed evidence supports conclusions of law which would justify the denial of defendant's motion to suppress.
Challenging the trial court's denial of his motion to suppress the currency and check found in his pocket, defendant avers thatHoneycutt lacked probable cause to arrest him at the time he performed the search yielding Edwards' property. Because the search was performed without a warrant and not incident to a lawful arrest, defendant claims that its fruits were inadmissible.
Consistent with the Fourth Amendment, a police officer may arrest a suspect without a warrant based upon probable cause to believe that the suspect has committed a felony. See N.C. Gen. Stat. § 15A-401(b)(1) (2003). "`Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.'" State v. Harris, 279 N.C. 307, 311, 182 S.E.2d 364, 367 (1971) (quoting 5 Am. Jur. 2d Arrests § 44 (1962)). Moreover, incident to a lawful arrest, the officer may conduct a warrantless search of "`the area from within which [an arrestee] might gain possession of a weapon or destructible evidence.'" State v. Thomas, 81 N.C. App. 200, 210, 343 S.E.2d 588, 594 (1986) (quoting Chimel v. California, 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694 (1969)).
Based on the undisputed facts before the trial court, we conclude that Officer Honeycutt had probable cause to arrest defendant for the robbery of Edwards at the In and Out. Honeycutt interviewed Edwards immediately after the alleged robbery, while his injuries were fresh and corroborated his allegations. Edwards described his assailant as "a tall, black male, about six f[ee]t tall, wearing a black and white jacket and black pants." A store employee advised Honeycutt of the suspect's path of flight from thestore, further corroborating Edwards' story. Upon entering the housing development where Edwards' attacker had fled, Honeycutt spotted defendant, who matched Edwards' description and was clad in a black and white jacket and black jeans. Defendant was standing a mere 100 to 150 yards from the site of the alleged crime. When Honeycutt approached defendant, he ran, ignoring the uniformed officer's subsequent commands to stop. Taken together, the powerful circumstantial evidence of a recent violent crime, defendant's close proximity to the crime scene minutes thereafter, the fact that he and his clothing matched the victim's description of the perpetrator, and defendant's flight from police were circumstances sufficient to lead a reasonably prudent officer to believe defendant was guilty of the robbery reported by Edwards. See State v. Smith, 328 N.C. 99, 112, 400 S.E.2d 712, 719 (1991) (citing State v. Zuniga, 312 N.C. 251, 263, 322 S.E.2d 140, 147 (1984)); State v. McNeill, 54 N.C. App. 454, 456, 283 S.E.2d 565, 567 (1981) (citing State v. Rudolph, 39 N.C. App. 293, 250 S.E.2d 318 (1979)).
Incident to his lawful arrest of defendant, Honeycutt was permitted to search defendant's pockets and to seize "any property which such person has about him and which is connected with the crime charged." Zuniga, 312 N.C. at 258, 322 S.E.2d at 144 (citing State v. Roberts, 276 N.C. 98, 171 S.E.2d 440 (1970)). Accordingly, the trial court properly denied defendant's motion to suppress the evidence obtained by Honeycutt during the search. Defendant also challenges the denial of his motion to suppress Edwards' identification of him as the perpetrator of the robbery, citing the unfairly suggestive nature of the "show-up" conducted by police at the crime scene. Defendant argues that "Edwards only saw his assailant briefly[,]" that he was distracted by the beating he received and by the coffee poured onto his face, and that his description of his assailant to Honeycutt was too "vague" to exclude any number of innocent persons. Defendant further notes that he was shown to Edwards while handcuffed in the back seat of a patrol car.
Show-up identifications, while disfavored as inherently suggestive, "are not per se violative of a defendant's due process rights." State v. Turner, 305 N.C. 356, 364, 289 S.E.2d 368, 373 (1982)." In evaluating the legality of a show-up identification under the Due Process Clause, this Court must determine if the totality of the circumstances surrounding the show-up procedure created a "substantial likelihood of irreparable misidentification." Id. "An unnecessarily suggestive show-up identification does not create a substantial likelihood of misidentification where under the totality of the circumstances surrounding the crime, the identification possesses sufficient aspects of reliability." Id. The reliability of a show-up identification is determined by examining the following five factors:
(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of thecriminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and confrontation.
State v. Powell, 321 N.C. 364, 369, 364 S.E.2d 332, 335, cert. denied, 488 U.S. 830, 102 L. Ed. 2d 60 (1988).
Here, the evidence showed Edwards had ample opportunity to observe his assailant before, during and after the assault and robbery. The incident occurred in broad daylight. Although the actual assault lasted only "a minute[,]" Edwards saw his attacker "clearly" each time his "head c[a]me up off the asphalt." See State v. Lawson, 159 N.C. App. 534, 538, 583 S.E.2d 354, 357-58 (2003) (upholding identification where store clerk observed defendant's face while being held at gunpoint for approximately twenty-five seconds). As alluded to by the trial judge at the suppression hearing, Edwards also observed the individual standing by the front door of the In and Out when he first went into the store, and saw him run away from the store following the assault. Moreover, upon direct questioning from the trial judge, Edwards confirmed that he would have been able to identify his assailant in court, "even if the police had not have found him that morning and brought him back to [the] store[.]"
The second factor, the witness' degree of attention, further militates in favor of the reliability of the identification. As the victim of a severe assault and robbery, Edwards' attention was unquestionably focused on his assailant.
Turning to the third Powell factor, we find that Edwards' description of his assailant as "a tall, black male, about sixf[ee]t tall, wearing a black and white jacket and black pants[,]" while fairly general in providing only the suspect's sex, race and approximate height, included distinctive detail about the assailant's clothing. Inasmuch as Edwards' prior description was matched by defendant in all material respects, we deem it sufficiently reliable to support the identification. See State v. Richardson, 328 N.C. 505, 511, 402 S.E.2d 401, 405 (1991) (finding identification "reliable" where witness accurately described defendant's clothing, bag, and approximate height and weight).
The fourth factor, the witness' degree of certainty, also weighs in favor of reliability. Edwards immediately and without equivocation identified defendant as the person who had just assaulted and robbed him. Although defendant was in the back of a police car when presented to Edwards, we have previously held that "`the showing of a suspect to a witness while the suspect is in a patrol car . . . is not in and of itself impermissibly suggestive.'" State v. Cain, 79 N.C. App. 35, 44, 338 S.E.2d 898, 904 (quoting State v. McLain, 64 N.C. App. 571, 573, 307 S.E.2d 769, 770 (1983)), disc. review denied, stay denied, 316 N.C. 380, 342 S.E.2d 899 (1986).
Finally, the show-up was conducted less than twenty minutes after the assault and robbery, a fact which lends additional credibility to Edwards' identification of defendant. See McLain, 64 N.C. App. at 573-74, 307 S.E.2d at 771.
Taken as a whole, the circumstances surrounding the show-up contain sufficient indicia of reliability to allow Edwards'pretrial identification of defendant into evidence. We note that Edwards did not learn of defendant's possession of his money and check until after he had positively identified him as the robber. Therefore, the result of the show-up was not tainted by the fruits of Honeycutt's search of defendant. Moreover, absent any likelihood of irreparable misidentification arising from the show-up, we find no grounds to suppress Edwards' in-court identification. Defendant's assignment of error is overruled.
The record on appeal contains additional assignments of error not addressed by defendant in his brief to this Court. Pursuant to N.C.R. App. P. 28(b)(6), we deem them abandoned.
No error.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).